SOUTH SIDE MOVE OF GOD CHURCH, Plaintiff-Appellee, *v.* ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)　No. 76-172

Opinion filed April 5, 1977.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert Retke, Assistant Corporation Counsel, of counsel), for appellants.

Stone, Pogrund & Korey, of Chicago (Paul J. Cherner and Bertram A. Stone, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, the South Side Move of God Church, commenced this action for administrative review of a decision of the Chicago Zoning Board of Appeals (hereinafter "Zoning Board" denying plaintiff's application for a variation in the nature of a special use. (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—13.) Defendants bring this appeal from the circuit court's reversal of the Zoning Board's decision and raise the issue of whether the evidence adduced by plaintiff at the public hearing before the Zoning Board was legally sufficient to entitle plaintiff to a special use permit. More specifically, defendants contend that plaintiff failed to establish that the proposed use is necessary for the public convenience at that location and that the public health, safety and welfare will be protected if the permit is granted.

By its application, plaintiff sought approval of the continued use as a church of certain property owned by it and located at 9154 South Ashland Avenue in Chicago. After considering the application, the Office of the Zoning Administrator for the City of Chicago rendered a decision whereby plaintiff's application was not approved because the "proposed improvement does not conform with the requirements of the Chicago Zoning Ordinance." Plaintiff appealed this decision to the Zoning Board, and, pursuant to the Chicago Zoning Ordinance, the Department of Development and Planning filed a report with the Zoning Board recommending that the application be denied. On November 15, 1974, a public hearing was conducted before the Zoning Board. After evidence

was presented in favor of the application, the Zoning Board entered a resolution wherein the following findings were enumerated:

"* * * that in this case the proposed use is to be located in a C2-2 General Commercial District; that the proof presented did not indicate that the establishment of a church at this location would not cause substantial injury to the value of other property in the neighborhood in which it is located; that the Board takes judicial notice of the establishment of a used car sales lot, two gasoline service stations and a tavern within close proximity to the subject site whose rights could be jeopardized by the establishment of a church at this location * * *."

Accordingly, plaintiff's application for a special use permit was denied.

Upon administrative review, the circuit court reversed the decision of the Zoning Board and ordered that a special use permit be issued to plaintiff.

The subject premises is located in a district zoned C2-2, General Commercial District. Although a church is not a permitted use in C2-2 districts, it is denominated as a special use which may be allowed in such districts pursuant to the variation provisions of article 11 of the Chicago Zoning Ordinance. (Chicago, Ill., Chicago Municipal Code, ch. 194A, pars. 9.4—2, 11.10—4 (1974).) Article 11 in pertinent part provides as follows:

"Standards. No special use shall be granted by the Zoning Board of Appeals unless the special use:

(1) a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and
* * *

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located."

The evidence introduced at the public hearing disclosed that plaintiff began conducting religious services for its 100 members at the subject site in July of 1974. Prior to that time, the church was located at 6401 South Ashland Avenue, but plaintiff was compelled to relocate when that property was condemned for urban renewal purposes.

The pastor of the church testified that plaintiff purchased the subject premises for $55,000 and expended an additional $30,000-$40,000 for

renovations. Although the property does not have facilities to provide off-street parking for the members of the congregation, an offer to purchase, conditioned upon the outcome of this litigation, has been made by plaintiff to purchase a vacant lot adjacent to the church which would provide, according to plaintiff's witnesses, ample parking accommodations.

Plaintiff's architect testified that the building is in good condition and that it is well suited for plaintiff's religious activities. He identified two existing building code violations—a problem in the boiler room and some substandard partitions—which could be easily corrected, but stated that a special use permit is necessary before plaintiff can obtain a building permit. The witness described the vicinity in which the subject premises is located. Most buildings on the 9100 block of South Ashland Avenue are used for commercial purposes, and the neighborhoods extending in both directions from Ashland Avenue are zoned residential. While noting that other churches are located nearby, it was his opinion that the location of plaintiff's church would not adversely affect the values of surrounding properties.

Upon questioning by the chairman of the Zoning Board, the architect explained that he had been a licensed real estate broker but that he allowed his license to expire "a few years back" when he phased this type of real estate business out of his business activities "several years ago." The witness was familiar with provisions of the municipal code prohibiting the establishment and operation of gasoline service stations and automobile sales agencies within 200 feet of a church, but it was his opinion that existing commercial establishments of this nature which are situated within 200 feet of the subject premises would be characterized as nonconforming uses and thus would not be in jeopardy of losing their licenses. Consequently, it was his belief that plaintiff's church would not have a deleterious effect on these businesses, unless these businesses changed the use of their property and then subsequently desired to revert to their original use as either a service station or an automobile agency.

Plaintiff's treasurer testified that he did not believe that any traffic problems developed in the neighborhood when plaintiff conducted religious services at the present site.

The Zoning Board also had before it five letters from persons who operated businesses in the vicinity of the subject premises. Two gasoline service stations and an automobile agency, all located within 200 feet of the church, submitted letters in which they expressed no objection to plaintiff's application. The owner of six lots on the same block as plaintiff's property submitted a letter indicating that he operates an automobile agency and that parking accessibility on Ashland Avenue is essential for the convenience of his customers and the success of his

business. He anticipated traffic congestion problems on Ashland Avenue if plaintiff's members continue to park their cars on the street. Another property owner who operated a dry cleaning service, a lounge and a restaurant across the street from plaintiff's church objected to plaintiff's application since two other churches are located in the neighborhood.

No testimonial evidence was adduced in opposition to the application.

On administrative review, the findings and conclusions on questions of fact made by an administrative agency shall be held to be prima facie true and correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) The reviewing court's function is limited to ascertaining whether the findings and decisions of the agency are against the manifest weight of the evidence; if they are, only then should the agency's decision be disturbed. *Roosevelt Memorial Hospital v. Chaddick* (1970), 131 Ill. App. 2d 82, 266 N.E.2d 755.

■■ An applicant for a special use permit has the burden of proving that the proposed use satisfies all of the standards required by the controlling zoning ordinance. (*Allen v. Board of Appeals* (1969), 118 Ill. App. 2d 376, 254 N.E.2d 840.) However, the failure of the applicant to adduce sufficient evidence to fulfill one or more requirements of the special use ordinance will not necessarily justify the denial of the proposed use if such prohibition does not bear a real and substantial relation to the public health, safety, morals or general welfare (*Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 199 N.E.2d 797) and if there is no adverse affect on adjacent properties (*Kraegel v. Village of Wood Dale* (1973), 10 Ill. App. 3d 486, 294 N.E.2d 64). Since a special use zoning ordinance does not allocate any particular zones for the establishment of these unique uses as a matter of right, the local zoning authority is vested with broad powers in determining the suitability of a given site for the proposed special use. *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454.

■■ After reviewing the record, we find that the decision of the Zoning Board is amply supported by the evidence and that plaintiff failed to establish that it was entitled to a special use permit pursuant to the applicable standards of the Chicago Zoning Ordinance.

Plaintiff offered no evidence tending to show that "the special use is necessary for the public convenience at that location." There was no showing that this particular locale was assigned to plaintiff's ministry, that members of the congregation live within close proximity of the subject premises, or that plaintiff unsuccessfully attempted to locate its church in a zoning district where churches are permitted uses. Compare *St. James Temple v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 241 N.E.2d 525, *appeal denied* (1969), 40 Ill. 2d 578, *cert. denied*, 395 U.S. 946, 23 L. Ed. 2d 464, 89 S. Ct. 2019, *Columbus Park Congregation v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722.

■■ Plaintiff also failed to establish that the special use is "so designed, located and proposed to ·be operated that the public health, safety and welfare will be protected." One objector expressed concern in his letter to the Zoning Board that the continued use by plaintiff of the subject premises as a church would create a traffic congestion problem to the detriment of his customers and his commercial business. On this point, plaintiff conceded that it did not presently have off-street parking accommodations for its parishioners, but plaintiff introduced evidence of an offer to purchase an adjacent vacant lot containing 5000 square feet. Two witnesses testified that the procurement of this lot would provide ample parking for the congregation. The applicable ordinance requires a church to provide one parking space for every 12 seats in the church. (Chicago, Ill., Chicago Municipal Code, ch. 194A, § 9.11—1 (1974).) No evidence was presented revealing how many seats are in the church and how many parking spaces the vacant lot could provide. Consequently, the Zoning Board could have properly concluded that the special use did not conform to the applicable zoning regulations and that public safety would be decreased.

■■ Plaintiff also failed to establish that the special use "will not cause substantial injury to the value of other property in the neighborhood in which it is located." Only one expert witness, an architect and engineer, testified on behalf of plaintiff. It was this witness' opinion that the special use would not have a deleterious impact on property values in the vicinity of the subject premises. By this witness' own admission, however, he had allowed his real estate broker's license to expire a "few years back," and he had eliminated this portion of his business activities "several years ago." Consequently, this witness's expertise for the purpose of offering an opinion concerning property values was not established. In this regard, the chairman of the Zoning Board recommended that plaintiff call another witness to testify on this point, but plaintiff elected not to pursue this topic of examination further. Moreover, the Zoning Board manifested a genuine concern regarding the location of a church within 200 feet of an automobile sales agency and two gasoline service stations and within 100 feet of a tavern and the potential for licensing problems which could arise for any of those businesses. See Chicago, Ill., Chicago Municipal Code, §§ 127—5 and 156—12 (1974); Ill. Rev. Stat. 1975, ch. 43, par. 127.

■■ We agree that different presumptions become operative when zoning ordinances are applied in situations involving the constitutional guarantees of freedom of religion. (See *Columbus Park Congregation v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722.) But in the instant case, plaintiff failed to meet any one standard of the special use ordinance, let alone all of them. Hence, the Zoning Board's denial of plaintiff's application for a special use permit was not contrary to the

manifest weight of the evidence. Accordingly, the judgment of the circuit court reversing the Zoning Board's decision is hereby reversed.

Judgment reversed.

DOWNING, P. J., and PERLIN, J., concur.