**LOVE CHURCH, an Illinois not-for-profit corporation, and Marzell Gill, an individual, Plaintiff,**

v.

**CITY OF EVANSTON, an Illinois municipal corporation, Defendant.**

No. 86 C 9850.

United States District Court, N.D. Illinois, E.D.

March 20, 1987.

John W. Mauck, Richard Baker, Thomas Cameron, Friedman and Mauck, Chicago, Ill., for plaintiff.

Jack Siegel, Siegel and Warnock, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the motion of plaintiffs Marzell Gill ("Gill") and Love Church, Inc. ("Love Church") for summary judgment pursuant to Federal Rule of Civil Procedure 56 and the motion of defendant City of Evanston ("Evanston") to dismiss the complaint for lack of a case or controversy and/or failure to state a claim. For the reasons below, we deny plaintiffs' motion for summary judgment and grant in part defendant's motion to dismiss.

## FACTS

Plaintiff Love Church is a not-for-profit corporation established in June 1985. Complaint, Affidavit of Marzell Gill at ¶ 2. Gill is Love Church's pastor. *Id.* at ¶ 3. Love Church's congregation is comprised of approximately 30 young "working class" black men and women residing in and around Evanston.[1] *Id.* The church is not affiliated with any denomination, although it believes in traditional Christian teachings. *Id.* at ¶¶ 4, 5. Love Church's congregation meets every Sunday to practice its religion but has no permanent house of worship and instead has convened in public

---

1. Gill states the congregation now consists of 11 members because the church lacks proper facilities; at one time 250 people attended Love Church's services. Supplemental Affidavit of Gill at ¶¶ 2, 3.

halls and private homes. Complaint at ¶¶ 8, 16, 17. Since April 1986, Love Church has sought to lease property on which to hold services and run a Sunday/nursery school. *Id.* at ¶ 18.

Love Church has yet to obtain a lease and has been meeting in a 900 square foot apartment of one of its congregants. *Id.*, Affidavit of Gill at ¶ 19; *see also* Plaintiff's Motion for Summary Judgment, Supplemental Affidavit of Gill at ¶ 2.[2]

Plaintiffs allege that Evanston's Zoning Ordinance ("Ordinance") has made it impossible for Love Church to obtain a suitable lease. Complaint at ¶¶ 19, 20. Churches are not permitted uses anywhere in the city of Evanston, although Evanston allows churches in any residential or business/commercial district provided they secure special use permits. *Id.* at ¶ 7; Ordinance §§ 6-5-2(b); 6-7-2-2; 6-7-3-16(B).[3] To obtain a permit, the applicant files a detailed plan for the proposed special use and pays a fee of between $370 and $480. *Id.* at ¶ 10. Evanston's Zoning Board then publishes notices concerning the proposed use and holds a hearing "within a reasonable time," approving or denying the use. *Id.* at ¶¶ 12, 13; *see also* Ordinance § 6-12-4(B). A decision is usually rendered in four to six months. *Id.* at ¶ 14. Ordinance § 6-11-13 provides for misdemeanor fines of $25 to $500 a day for each violation of the ordinance.

Plaintiffs claim that because of their limited finances they must include a contingency clause in any lease they negotiate. The clause would have the effect of voiding the lease should Evanston deny plaintiffs the special use permit. Gill states that none of the landlords he has negotiated with would agree to a contingency clause because they would have had to take their property off the market for four to six months with no certainty of leasing. *Id.*, Affidavit of Gill at ¶¶ 11, 12; *see also* Supplemental Affidavit at ¶ 1. Plaintiffs attack the constitutionality of the ordinance

on various grounds: as violative of the Fourteenth Amendment's Due Process and Equal Protection Clauses, as repugnant to the First Amendment's Establishment and Free Exercise Clauses, and as a prior restraint on their freedom of expression. *Id.* at ¶¶ 23-27. Plaintiffs argue that the ordinance is unconstitutional on its face or as applied to them in this case and move for summary judgment. Evanston denies the unconstitutionality of its ordinance and challenges plaintiffs' standing to sue.

## DISCUSSION

As a threshold issue, we must determine whether plaintiffs have standing to sue. Article III of the Constitution limits the power of the judiciary to the resolution of "cases" or "controversies." *Foster v. Center Township of La Porte County,* 798 F.2d 237 (7th Cir.1986). The concept of standing derives from the case or controversy requirement. *Id.* at 241. In order for a party to have standing to sue, the party must personally suffer actual or threatened injury as a result of defendant's putatively unconstitutional conduct; the injury must fairly be traced to the challenged action; and the injury must be one that can likely be redressed by the court's favorable decision. *Id.* at 241, 242 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

Evanston argues that plaintiffs have suffered no actual or threatened injury because they have neither applied for, nor have they been denied, a special use permit for any location. Defendant's Memorandum in Support of Motion to Dismiss at 5 ("Defendant's Mem."). The city has not, and intimates it will not, prosecute plaintiffs for assembling or worshiping in places other than a formal church. *Id.* at 5. Plaintiffs, on the other hand, argue that "but for" the Evanston ordinance they could have signed leases at four locations. Plaintiffs' Answer and Brief to Motion to

---

2. Plaintiffs now convene at a Holiday Inn in Skokie, Illinois. Supplemental Affidavit of Gill at ¶ 7.

3. Churches are not singled out for this procedure; art galleries, libraries, museums, and various other uses must also obtain special use permits under the ordinance.

Dismiss at 2 ("Plaintiffs' Brief"). Evanston argues that "the reluctance of property owners to lease to the plaintiffs is not the City's doing." Defendant's Mem. at 2. Indeed, plaintiffs admit that "the necessity of having a special use permit contingency clause has kept the church from obtaining a meeting place." Plaintiffs' Brief at 1, 2. Yet plaintiffs stress that their financial circumstances leave them no alternative negotiating strategy. *Id.*

■ We agree with Evanston that plaintiffs have no standing to sue, but only insofar as they allege a violation of due process. Plaintiffs have raised no case or controversy regarding the enforcement of the ordinance. Evanston's ordinance is presumptively valid. *Cosmopolitan National Bank v. County of Cook*, 116 Ill. App.3d 1089, 1094, 72 Ill.Dec. 564, 569, 452 N.E.2d 817, 822 (1st Dist.1983). Plaintiffs have neither leased property nor applied for a special use permit. We presume Evanston will fairly apply the ordinance; if plaintiffs apply for a permit at an appropriate site, a permit presumably will issue. If a permit does not issue, then plaintiffs will have standing to bring a suit for violation of due process. *See Lubavitch v. Evanston*, 112 Ill.App.3d 223, 67 Ill.Dec. 863, 445 N.E.2d 343 (1st Dist.1982) (where plaintiff, after meeting all the criteria, was arbitrarily denied a special use permit, court ordered defendant to issue the permit).

■ Plaintiffs do present a case or controversy, however, on their Free Exercise and Equal Protection Clause claims.[4] Evanston has no zone where churches can establish themselves without special use permits. Their injury—the inability to obtain a lease—is fairly traceable to Evanston's ordinance. No matter where plaintiffs go in Evanston, they would have to insist on a clause making the lease contingent on Evanston granting them a special

use permit. Plaintiffs allege this special use procedure is unconstitutional in at least two ways. First, it burdens their ability to freely worship by hindering—indeed extinguishing—their capacity to lease property. Complaint at ¶¶ 25, 26, 30(b). Second, they argue that this ordinance distinguishes between religious and secular uses of land, permitting secular uses (such as theatres) to establish themselves without special use permits, while always requiring special use permits for religious uses. *Id.* at ¶ 26. Both the Free Exercise and the Equal Protection claims attack the validity of the requirement for a permit. Where plaintiffs challenge the constitutionality of having to go though an administrative procedure, they need not go through that procedure in order to have standing. *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497, 500 (7th Cir.1980). Because plaintiffs' interests are directly affected by the ordinance, they have standing to attack it. *American Booksellers Association, Inc. v. Hudnut*, 771 F.2d 323, 326 (7th Cir.1985) (citing *Buckley v. Valeo*, 424 U.S. 1, 11–12 and note 10, 96 S.Ct. 612, 630–631, and note 10, 46 L.Ed.2d 659 (1976)). We will now turn to plaintiffs' substantive claims.

**First Amendment Claims**

■ Plaintiffs claim the ordinance violates their First Amendment rights by establishing a religion, restraining their freedom of expression, and burdening their practice of religion. The First-Amendment states, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press...." Two of plaintiffs' arguments show themselves to state no claim and can be disposed of with little difficulty. Regarding the Establishment Clause, regulations which reflect a clearly secular pur-

---

4. We question whether Pastor Gill has any interest beyond that of Love Church, that would give him standing to sue regarding the remaining claims of free exercise and equal protection. Nothing in the complaint indicates that he suffers an injury distinct from the injury suffered by Love Church. His injury *derives* from the fact that the ordinance requires *churches* to get

special use permits. Accordingly, we dismiss him as a party for want of standing. If Love Church has a different view of the matter, it may submit a brief on this point and we will reconsider our decision. We will continue to refer to the "plaintiffs" for the sake of continuity.

pose do not run afoul of the clause. *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The ordinance and the criteria for special use permits express the clearly secular purpose of protecting the health, safety, morals, and welfare. *See* Ordinance at § 6–1–2. The *Lemon* Court expressly stated "Fire inspections [and] building and zoning regulations ... are examples of necessary and permissible [state] contacts." *Lemon* 403 U.S. at 614, 91 S.Ct. at 2112. Accordingly, plaintiffs do not state a claim under the Establishment Clause.

▮▮▮ Plaintiffs prior restraint claim stems from the allegation that the ordinance is overbroad. Complaint at ¶ 30(d). An ordinance may be constitutionally invalid if it is written so broadly that it may inhibit—have a "chilling effect" and act as a "prior restraint"—on protected speech. *Schultz v. Frisby*, 807 F.2d 1339, 1349 (7th Cir.1986) (quoting *Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984)). We conclude that this ordinance is not overly broad because it does not restrain plaintiffs, or anyone, from worshiping. Plaintiffs have availed themselves of other meeting places for worship in Evanston (the Holiday Inn). The ordinance merely prescribes certain procedures which plaintiffs must follow should they wish to own or lease property. Accordingly, plaintiffs do not state a claim under the prior restraint doctrine of the First Amendment.

Plaintiffs' Free Exercise claim requires more analysis. Plaintiffs argue, "Without the right to maintain a church building where a system of religious belief may be taught and where individuals may enjoy the vitality of collective worship, 'free exercise of religion' is meaningless." Plaintiffs' Brief in Support of Injunction at 4 ("Plaintiffs' Inj. Brief"). Plaintiffs do not support their argument with any analysis of the Free Exercise Clause or the cases decided under it.

▮▮ Three major cases—*Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)—have shaped Free Exercise jurisprudence. What has emerged from these cases is a three-tiered analysis. As a preliminary matter, the Free Exercise Clause absolutely prohibits regulation of religious beliefs and opinions. *Braunfeld*, 366 U.S. at 603, 81 S.Ct. at 1145. A state may, however, regulate religious conduct. *Id.* Evanston's ordinance regulates conduct—where and how one can lease property as a church—and therefore passes the first tier of analysis. Next, the law must have a secular purpose and effect. *Id.* at 607, 81 S.Ct. at 1148. As we stated in regard to the Establishment Clause, the ordinance has a clearly secular purpose and its essential effect is not to suppress religious worship. So, the ordinance passes tier two. Finally, we examine the nature of the religious observance at stake, and balance it against the nature of the burden placed on the religious observance. "As a general rule, the greater the cost of practicing one's religion, the more probable that the statute creates an unconstitutional infringement...." *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303, 305 (6th Cir.1983). Unconstitutional burdens on religious conduct occur when the government regulates practices flowing from fundamental religious beliefs. In *Wisconsin v. Yoder*, for example, an Amish person's decision to withdraw his child from public school could not be burdened with threats of criminal sanctions because withdrawal from public school flowed from a "fundamental tenet" of the Amish religion. 406 U.S. at 218, 92 S.Ct. at 1534. *Sherbert* involved a Seventh Day Adventist's loss of unemployment benefits owing to her refusal to work on Saturdays; the Supreme Court held that refusal to work on Saturday followed "a cardinal principle of her religious faith" and therefore the state could not burden her religious practices with the loss of benefits. 374 U.S. at 406, 83 S.Ct. at 1795; *See also Heffron v. ISKCON*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (Hare Krishnas may sell and distribute religious literature); *United*

*States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Amish need not pay Social Security tax).

Plaintiffs argue that their effort to lease a church site flows from a fundamental tenet of their religion, and that it should therefore be insulated from the burden of regulation. But their characterization is not borne out in the case law. In *Lakewood,* the Jehovah's Witnesses had bought property in an area zoned exclusively for residential use; they had planned to construct their own place of worship on that lot. *Lakewood,* 699 F.2d at 304. The plaintiffs applied for and were denied a variance. They sued, claiming that denial of the variance burdened their right to assemble and worship. The Sixth Circuit held:

> The Congregation's 'religious observance' is the construction of a church building in a residential district.... [T]he activity has no ritualistic significance for the Jehovah's Witnesses.... The zoning ordinance does not prevent the Congregation from practicing its faith through worship whether the worship be in homes, schools or other churches, or meeting halls throughout the city. The ordinance prohibits the purely secular act of building anything other than a home in a residential district.

*Id.* at 307. *See also Grosz v. City of Miami Beach, Florida,* 721 F.2d 729 (11th Cir.1983) in which the court held that requiring 50 congregants to cease worshiping in their rabbi's home, located in an exclusively residential district, did not burden their right to worship, as their conduct was not rooted in a religious belief but involved a secular, personal and philosophic choice.

As in *Lakewood* and *Grosz,* plaintiffs wish to worship on property free from Evanston's regulation. Plaintiffs' freedom to worship is at best tangentially related to worshiping in their own building. While convenient and desirable, leasing property is not a fundamental tenet or cardinal prin-

ciple of the religion—in contrast to the situations in *Sherbert* and *Yoder.* The ordinance does not prevent plaintiffs from practicing their faith through worship in homes or other churches or meeting halls.

■ The burden this ordinance places on Love Church is merely financial.[5] If the price is right, landlords can be found who will be willing to agree to a contingency clause. If all else failed, plaintiffs could rent without a contingency clause. Economic burdens do not rise to a constitutionally impermissible infringement of freedom to worship. *Braunfeld,* 366 U.S. at 605, 81 S.Ct. at 1147. In *Braunfeld,* Sunday closing laws did not unconstitutionally burden the religious rights of observant Jews who closed their businesses on Saturday and wanted to open on Sunday. It merely made the practice of their religion more costly. *Id.* Evanston's ordinance has the same effect here. Evanston does not put plaintiffs in the situation where exercising their religious beliefs would result in criminal penalties or loss of government benefits. While plaintiffs could face penalties if they assembled as a church without a permit, the penalties have a secular purpose and effect and do not impinge on plaintiffs' free exercise of religion. *See Lakewood,* 699 F.2d at 307.

■ Plaintiffs would distinguish *Lakewood* by the fact that churches were permitted uses at least somewhere in Lakewood, whereas in Evanston churches require special use permits in all zones; Evanston's ordinance therefore has the purpose and effect of eliminating from Evanston all exercise of a First Amendment right. Plaintiffs' Brief at 9–11. We do not agree. Evanston has at least 70 churches. Defendant's Mem. at 4. There were, and presumably there are, religious users for whom the cost of obtaining a special use permit will not be prohibitive. Moreover, nothing in the record indicates that plaintiffs could not lease, or sublease, an existing church or worship in a meeting hall. These alternatives may be less appealing or

---

5. Plaintiffs have supplied no information regarding the rents that have been demanded of them with or without a contingency clause.

They simply argue that no one will rent to them if they insist on such a clause. *See supra* at 510.

more costly. But the Constitution does not require Evanston to subsidize the real estate market for First Amendment users. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The sweep of Evanston's ordinance is irrelevant for the purposes of Free Exercise Clause analysis. Despite the financial imposition on plaintiffs, we hold that their freedom of religion, as protected by the Free Exercise Clause, has not been infringed.

## Equal Protection Clause

Although plaintiffs do not clearly articulate an Equal Protection argument, we believe this is the crux of their challenge to Evanston's Zoning Ordinance.[6] Plaintiffs argue that Evanston gives "non-religious assembly uses preferences over substantially identical religious uses." Plaintiffs' Brief at 11. The Equal Protection Clause mandates that "all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Plaintiffs note that all commercial districts (C1, C2, C3) permit hotels and meeting halls; Districts C2 and C3 permit auction rooms and funeral parlors. Plaintiffs' Inj. Brief at 7. But churches must obtain a special use permit in order to locate in these zones. *Id.* In all business districts, hotels, meeting halls, and music schools are permitted; theatres are permitted uses in almost all of these zones. Churches need special use permits. And in a manufacturing zone (M3), where auditoriums and arenas can locate, churches are prohibited. *Id.* In other words, plaintiffs argue that Evanston, in its zoning ordinance, has segregated religious land uses from other commercial or business land uses, and subjected religious uses to treatment unlike that of secular uses.

Defendant's argument that churches may be subject to reasonable regulation and that special use permits have been continually upheld as a method of reasonable regulation is unresponsive. It addresses the issue of whether churches can be regulated at all. That is a different point. Furthermore, Evanston bases its argument on cases where churches were permitted uses somewhere in the municipality and the churches sought to locate in residential districts. See Defendant's Mem. at 8–12; *South Side Move of God Church v. Zoning Board of Appeals*, 47 Ill.App.3d 723, 7 Ill.Dec. 833, 365 N.E.2d 118 (1977); *Coston Chapel A.M.E. Church v. Chaddick*, 9 Ill.App.3d 321, 292 N.E.2d 215 (1972); *St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals*, 100 Ill.App.2d 302, 241 N.E.2d 525 (1968); *Minney v. City of Azusa*, 164 Cal.App.2d 12, 330 P.2d 255 (1958); *Corporation of Presiding Bishop C.J.L.D.S. v. Porterville*, 90 Cal.App.2d 656, 203 P.2d 823, *Appeal Dismissed*, 338 U.S. 850, 70 S.Ct. 78, 94 L.Ed. 487 (1949). The general thrust of these cases was that churches affected the character of a residential neighborhood— by increasing traffic, making parking more difficult, and so forth—and that permitting churches only as special uses was rationally related to the municipality's exercise of its police power. Plaintiffs do not challenge Evanston's authority to regulate residential districts by means of a special use permit. Rather, they challenge the ordinance's rationality as it relates to business and commercial districts.

Because of the posture of this case,[7] defendant has not offered any justification for the ordinance. One possibility, we suppose, is "conserving the taxable value of land and buildings throughout the city." Ordinance § 6–1–2(c). Whether or not this is Evanston's rationale, we must determine the appropriate level of scrutiny

---

**6.** The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Corporations are "persons" for the purpose of the Equal Protection Clause. *Metropolitan Life Insurance Company*

*v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985).

**7.** Defendant moved to dismiss the complaint; plaintiffs responded to the motion with their own motion for summary judgment. Defendant did not reply to that motion.

to give the religious use provision in the ordinance. If this classification is on the basis of religion, then scrutiny is strict:

> Where the legislative classification works to the disadvantage of a constitutionally suspect class—based for example, on race, nationality, alienage or religious affiliation—then courts may uphold the classification only if it is 'precisely tailored to serve a compelling governmental interest.'

*Sklar v. Byrne*, 727 F.2d 633, 638 (7th Cir.1984) (quoting *Plyler v. Doe*, 457 U.S. 202, 216–17 & n. 14, 102 S.Ct. 2382, 2395, & n. 14, 72 L.Ed.2d 786 (1982)). A compelling governmental interest must be supported with careful studies and detailed legislative findings. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). It would appear that Evanston bears a heavy burden here. *See Southern Burlington County NAACP v. Township of Mt. Laurel*, 67 N.J. 151, 336 A.2d 713, *appeal denied and cert. denied*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (preserving municipality's tax base was an illegitimate rationale for a zoning ordinance); *Jewish Reconstruction Synagogue v. Incorporated Village of Roslyn Harbor*, 38 N.Y.2d 283, 379 N.Y.S.2d 747, 342 N.E.2d 534 (1975), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976) (a religious institution's effect on the town's tax base outweighed by constitutional considerations). Evanston must also show that the special use permit procedure is the least restrictive way of serving its interest. If the classification is not on the basis of religion, the ordinance must still be rationally related to a government interest. *See Euclid v. Amber Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Evanston should now respond to plaintiffs' summary judgment motion based on denial of equal protection.

## CONCLUSION

We grant in part the defendant's motion to dismiss the complaint for failure to state a claim. The Equal Protection claim remains. We direct defendant to respond to plaintiffs' motion for summary judgment by April 10, 1987. Plaintiffs may reply by April 24, 1987. Plaintiffs' motion for summary judgment is denied. Plaintiff Gill is dismissed from the case for want of standing.