**LOVE CHURCH, an Illinois not-for-profit corporation, Plaintiff,**

v.

**CITY OF EVANSTON, an Illinois municipal corporation, Defendant.**

**No. 86 C 9850.**

United States District Court, N.D. Illinois, E.D.

Sept. 3, 1987.

See also 671 F.Supp. 508.

John W. Mauck, Richard Baker, Thomas Cameron, Friedman and Mauck, Chicago, Ill., for plaintiff.

Jack Siegel, Siegel and Warnock, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the motion of plaintiff Love Church, Inc. ("Love Church" or "plaintiff") for summary judgment on the ground that defendant City of Evanston's ("Evanston") zoning ordinance violates the Equal Protection Clause of the Fourteenth Amendment. For the reasons below, plaintiff's motion is granted.

## FACTS

We set forth the facts of this case in our previous memorandum opinion and reprint them here for convenience's sake:

Plaintiff Love Church is a not-for-profit corporation established in June 1985. Complaint, Affidavit of Marzell Gill at ¶ 2. Love Church's congregation is comprised of approximately 30 young "working class" black men and women residing in and around Evanston.[1] *Id.* The church is not affiliated with any denomination, although it believes in traditional Christian teachings. *Id.* at ¶¶ 4, 5. Love Church's congregation meets every Sunday to practice its religion but has no permanent house of worship and instead has convened in public halls and private homes. Complaint at ¶¶ 8, 16, 17. Since April 1986, Love Church has sought to lease property on which to hold services and run a Sunday/nursery school. *Id.* at ¶ 18.

Love Church has yet to obtain a lease and has been meeting in a 900 square foot apartment of one of its congregants. *Id.*, Affidavit of Gill at ¶ 2.[2]

Plaintiffs allege that Evanston's Zoning Ordinance ("Ordinance") has made it impossible for Love Church to obtain a suitable lease. Complaint at ¶¶ 19, 20. Churches are not permitted uses anywhere in the city of Evanston, although Evanston allows churches in any residential or business/commercial district provided they secure special use permits. *Id.* at ¶ 7; Ordinance §§ 6–5–2(b); 6–7–2–2; 6–7–3–16(B).[3] To obtain a permit, the applicant files a detailed plan for the proposed special use and pays a fee of between $370 and $480. *Id.* at ¶ 10. Evanston's Zoning Board then publishes notices concerning the proposed use and holds a hearing "within a reasonable time," approving or denying the use. *Id.* at ¶¶ 12, 13; *see also* Ordinance § 6–12–4(B). A decision is usually rendered in four to six months. *Id.* at ¶ 14. Ordinance § 6–11–13 provides for misdemeanor fines of $25 to $500 a day for each violation of the ordinance.

Plaintiffs claim that because of their limited finances they must include a contingency clause in any lease they negotiate. The clause would have the effect of voiding the lease should Evanston deny plaintiffs the special use permit. Gill states that none of the landlords he has negotiated with would agree to a contingency clause because they would have had to take their property off the market for four to six months with no certainty of leasing. *Id.*, Affidavit of Gill at ¶¶ 11, 12; *see also* Supplemental Affidavit at ¶ 1.

*Love Church v. City of Evanston,* 671 F.Supp. 508, at 509–510 (N.D.Ill.1987) ("March Memorandum"). In the March Memorandum, we narrowed plaintiff's challenge of the ordinance to one of equal protection. We noted that churches are not permitted as a matter of right anywhere in Evanston but must obtain a special use permit in order to lease, own, and operate property as a church. *Id.* at 514

---

1. Gill states the congregation now consists of 11 members because the church lacks proper facilities; at one time 250 people attended Love Church's services. Supplemental Affidavit of Gill at ¶¶ 2, 3.

2. Plaintiffs now convene at a Holiday Inn in Skokie, Illinois. Supplemental Affidavit of Gill at ¶ 7.

3. Churches are not singled out for this procedure; nursing homes, retirement homes, shelter care homes, shelters for the homeless, group care homes, institutions for the aged, retirement hotels, child care institutions, airports, private clubs, golf courses, truck gardening, nurseries and greenhouses and fast-food restaurants are not permitted uses anywhere in Evanston and must also obtain a special use permit in order to operate. *See* Ordinance §§ 6–5–1—6–8–5.

Meeting halls, theatres, schools, funeral parlors, community centers, and not-for-profit recreational buildings, however, are permitted as of right in some of Evanston's districts. *Id.* From the face of the ordinance, we concluded that Evanston gave secular assembly users preference over substantially similar religious assembly users in possible violation of the Equal Protection Clause. *Id.* at 514–515. We asked the parties to brief the issue, paying particular attention to the basis of the ordinance's classification and the appropriate level of scrutiny. *Id.*

## DISCUSSION

The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws" and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). Unequal treatment among similarly situated individuals, no matter how subtle, is anathema under the Equal Protection Clause. *Cf. Hamm v. Virginia Board of Elections,* 230 F.Supp. 156, *aff'd* 379 U.S. 19, 85 S.Ct. 157, 13 L.Ed.2d 91 (1964) (law requiring separate lists of blacks and whites in voting, property, and tax records invalid). The standards for determining the validity of state legislation, such as a zoning ordinance, under the Equal Protection Clause are well established:

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classifications challenged be rationally related to a legitimate state interest.

*New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). But where the legislative classification disadvantages a constitutionally suspect class, then "courts may uphold the classification only if it is 'precisely tailored to serve a compelling governmental interest.'" *Sklar v. Byrne,* 727 F.2d 633, 636 (7th Cir.1984) (quoting *Plyler v. Doe,* 457 U.S. 216–17 & n. 14, 102 S.Ct. at 2395 & n. 14).

Therefore, in order to apply the proper standard of review, we must determine the basis of the ordinance's classification. Evanston contends that "[t]he City is clearly not basing its classification on the basis of religion [but] purely on land use aspects." Defendant Memorandum in Opposition at 1 ("Def. Mem."). The uses which find themselves in the same category as churches, that is, excluded from all districts except upon obtaining a special use permit, are "nursing homes, child care institutions, retirement homes, shelter care homes, hospitals, airports, amusement establishments, cemeteries, food cooperatives in churches, not-for-profit recreational buildings, community centers, private clubs and lodges, golf courses, truck gardening, nurseries and greenhouses, shelters for the temporary homeless, group care homes, institutions for the aged, retirement hotels, and [fast food] restaurants." *Id.* at 2. Thus, Evanston concludes, the classification is not—on the basis of religion but on basis of the "special effect" these uses have upon their neighborhoods. *Id.* In other words, Evanston argues that because some secular land uses as well as religious land uses are classified in the same way, the classification is not based on religion but on legitimate municipal interest. To paraphrase Justice Marshall, when legislation burdens members of a class entitled to protection under the Fourteenth Amendment, the fact that the legislation also burdens members of unprotected classes is irrelevant. *Palmer v. Thompson,* 403 U.S. 217, 272, 91 S.Ct. 1940, 1968, 29 L.Ed.2d 438 (1971) (Marshall, J., dissenting). So when Evanston excludes churches from all its municipal zoning districts in the absence of special use permits, the fact that other land users must also obtain special use permits does not resolve the question of the basis of the ordinance's classification.

Rather than focus on what other land uses Evanston has chosen to conditionally

exclude, we must look to how Evanston treats land uses "similarly situated" to churches. *See Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3259 (in denying a special use permit, city violated Equal Protection Clause by disparately treating similar land uses). If all land uses similarly situated to churches must obtain special use permits, then Evanston's argument that the classification is not based on religion may have some merit.

The ordinance does not define the term "churches" but Webster's Ninth New Collegiate Dictionary gives the following definition: "a building for public and especially Christian worship." Interestingly, Evanston states that "[c]hurches now serve as community centers, schools, occasionally shelters for the homeless, food distribution centers and other social functions in addition to the traditional function of religious services and instruction." Def. Mem. at 12. We note that contrary to Evanston's reading of its ordinance, community centers (and not-for-profit recreation buildings) are permitted in residential zones 6 and 7. Schools are also permitted in those zones. It appears, then, that Evanston, by its own admission, treats churches differently than these uses because of "occasional other social functions" churches perform in addition to their traditional ones. As for traditional church use, clearly a land use similar to that is a meeting hall. At meeting halls, people assemble on a regular basis to attend speeches, lectures, or other ceremonies. At meeting halls, people socialize. Meeting halls are permitted uses in all business and commercial districts. Theatres, for zoning purposes, are not unlike churches, in that large groups of people of all ages assemble to participate in a common experience. Theatres are permitted uses in all commercial and most business zones. Funeral parlors are permitted uses in some business and commercial zones. Schools, as mentioned before, are permitted in two residential zones and certain types of schools are allowed in business and commercial zones.

More striking are the differences between churches and the other uses which must obtain special use permits. Airports, cemeteries, golf courses, green houses, nurseries, truck gardening, and hospitals are all land-intensive and sometimes noise-intensive uses which do not compare to a church use. Likewise, fast food restaurants and amusement establishments often keep round-the-clock hours and cater to needs altogether different from a church. Nursing homes, retirement homes, shelter care homes, group care homes, institutions for the aged, and retirement hotels are also residential uses generally incomparable to a church. Private clubs and lodges do appear to be uses similar to a church. However, this fact is not enough to establish that Evanston has not classified on the basis of religion. Other assembly uses are not subjected to the same treatment as churches. If meeting halls as well as theatres had to get special use permits, then Evanston could assert that it zoned on the basis of something other than religion.[4]

Evanston's claim that it has zoned purely on land use aspects and not on the basis of religion is not supported by the facts. Evanston argues further that because we previously ruled that the ordinance neither established religion nor impinged on its free exercise, the ordinance could not be based on a religious classification. Def. Mem. at 3–4. Defendant's conclusion is hasty. Suppose, for example, a group of people wished to assemble on a regular basis in Evanston to discuss and hear lectures on classical literature. This group might also wish to have seminars for young people after school or on weekends to expose them to "great books." These people could rent a building in any business or commercial zone and have their meetings. But if that same group of people wished to assemble for the purpose of religious worship and to hold classes for its young people to educate them about religion, they would have to get special permission from Evanston. The only distinguishable feature of the groups in our hypothetical is the purpose and content of

---

**4.** While such an ordinance would not be violative of the Equal Protection Clause, it might run afoul at the Free Speech Clause. *See infra* note 5.

the assembly. Because Evanston's ordinance distinguishes between religious assembly uses and non-religious assembly uses, it classifies on the basis of religion.

Having concluded that the ordinance classifies on the basis of religion, we will uphold it only if it is narrowly tailored to serve a compelling governmental interest. Evanston suggests "there are many bases for classifying churches separate and apart from hotels, meeting halls, theatres, auction rooms and funeral parlors." Def. Mem. at 11. We glean from Evanston's brief four reasons. One distinction Evanston suggests is that churches are noncommercial entities while business uses are obviously commercial. Since a church is a "community use," Evanston argues that it "could well conclude that it would be totally inappropriate to permit ... a church to be located in a business and commercial district without the necessary examination and conditional approval that a special use permit allows." *Id.* at 13. That a church needs the city's permission to operate because it is not a commercial enterprise, while a funeral parlor, because it charges for its services, does not, is unprincipled. The absence of commercial exchange in the case of a church does not threaten any compelling interest of Evanston. Evanston might intend to argue that segregating noncommercial uses from commercial uses is a fundamental zoning interest, since it cites *People v. Morton Grove,* 16 Ill.2d 183, 157 N.E.2d 33 (1959). *Morton Grove* was a challenge to a municipality's authority to prohibit residential uses from intruding into commercial and industrial zones. It was a fundamental attack on the concept of Euclidian zoning. Plaintiffs here do not suggest that Evanston may not exclude residential uses from commercial or industrial zones. Rather, they complain that their assembly use is treated differently than other assembly uses. In this context, we find the noncommercial/commercial distinction irrelevant. Evanston has not offered any reason why a church's noncommercial nature requires it to obtain special approval.

Evanston argues next that the "traffic generated by a church both with respect to volume and time may be substantially different than that generated by a hotel, meeting hall, funeral parlor or an auction room." Def. Mem. at 13. While traffic concerns are legitimate, we could hardly call them compelling. In any event, Evanston does not indicate how a church poses a greater traffic problem than, say, a funeral parlor. As plaintiffs point out, funeral parlor and church traffic depend on the vagaries of who died and who is preaching. Plaintiff Reply at 8. A sufficiently narrow way of protecting the city's interest is through parking and seating capacity regulations. Evanston requires all commercial and business uses to comply with these regulations in order to control traffic congestion caused by the uses. Evanston proffers no reason why churches could not be similarly regulated.

A closely related concern of Evanston's is the "introduction of large numbers of people travelling on foot." Def. Mem. at 12. While pedestrian safety is certainly a legitimate, even compelling interest, all business, commercial, and residential uses attract pedestrians. Many people walk to a theatre or meeting hall. If pedestrians do not threaten the city's interest while walking to attend a show or a meeting, why should it be different when they are walking to attend a religious service? The answer is it should not. The ordinance is not narrowly drawn to serve the interest of pedestrian safety.

Lastly, Evanston argues that the presence of young children "may be totally out of character in certain commercial as well as residential areas." *Id.* at 12. We find the phrase "totally out of character" to be laden with ambiguity. If by "totally out of character," Evanston relates to the health and safety of children, then Evanston's concern may be valid. However, to require churches to obtain special use permits because children may be present is overbroad. Evanston has permitted schools, not-for-profit recreation buildings, and community centers—uses which attract large numbers of children—to operate without special use permits. Furthermore, children attend theatres, go shopping and play in

parks, uses that are found in virtually every district in Evanston. Evanston has not required these uses to get special permission. Again, Evanston has offered no reason why the presence of children associated with church use presents any greater threat than the presence of children associated with any other permitted use.

Evanston argues that it may exclude any land use from the entire municipality, provided the exclusion bears a substantial relationship to the preservation of public health, safety, morals or general welfare. Def. Mem. at 10. For this position, Evanston relies on two Illinois cases, *High Meadows Park, Inc. v. City of Aurora*, 112 Ill.App.2d 220, 250 N.E.2d 517 (2d Dist. 1969) and *Village of Bourbonnais v. Herbert*, 86 Ill.App.2d 367, 229 N.E.2d 574 (3d Dist.1967). These cases are distinguishable on their facts and are even contrary to defendant's position.[5] *High Meadows Park* concerned an ordinance which banned trailers; *Village of Bourbonnais* involved an ordinance which conditionally excluded fire stations. Neither of those ordinances concerned the exclusion of a use protected under the constitution. In *Village of Bourbonnais,* the court did note that "municipalities ... are not required to set aside portions of territory within their boundaries to accommodate every land use, if some uses are wholly inconsistent with the existing and developing character of the municipality." 229 N.E.2d at 577. As a general statement, we do not disagree. But Evanston does not argue, nor could it, that churches are wholly incompatible with *every* district in Evanston. Furthermore, the court went on to say it disapproved of conditional exclusion when land uses could be accommodated within ordinary zoning classifications. *Id.* While arguing that churches are too mercurial to be accommo-

dated by ordinary zoning techniques, Evanston has been able to accommodate similarly situated assembly uses without much ado. Evanston cites *High Meadows Park* for the proposition that "there would appear to be no constitutional limitation on a municipality's power to exclude uses from a particular district...." 250 N.E.2d at 522. As quoted, not only is this proposition incomplete, it is wrong. *See City of Cleburne*, 473 U.S. at 447–50, 105 S.Ct. at 3258–60 (under the Equal Protection Clause, a district which accommodates multiple dwellings cannot exclude a group home for the mentally retarded). The court in *Bourbonnais* continued that "it would seem equally apparent [that zoning] must be exercised in a nondiscriminatory manner and based upon the reasonable exercise of police power...." *Id.* This is the pith of plaintiff's case—that Evanston's ordinance is discriminatory, that it treats similarly situated uses unequally and unreasonably.

Evanston maintains we must apply to its ordinance the more deferential test of rational relationship. After considering Evanston's argument, we are convinced that the ordinance cannot pass even that test. In light of *Cleburne,* unless Evanston can articulate a reason why a church use would threaten legitimate interests of the city in a way that other similarly situated permitted uses would not, then the ordinance is invalid. 473 U.S. at 448, 105 S.Ct. at 3259. Again, the interests Evanston says are rationally related to the ordinance are traffic congestion, pedestrian safety, and child safety. Evanston has provided no evidence that churches pose any greater threats to those interests than do the similarly situated permitted uses of meeting halls, theatres, and schools.

---

5. There are cases which have held a municipality may not exclude churches from every district within its boundary. *Mooney v. Village of Orchard Lake,* 333 Mich. 389, 53 N.W.2d 308 (1952); *North Shore Unitarian Soc. v. Village of Plandome,* 200 Misc. 524, 109 N.Y.S.2d 803 (1951). Both of these cases held that such an exclusion was an unreasonable exercise of police power. Additionally, the Supreme Court has suggested that a municipality may not totally exclude a land use that the First Amendment

protects. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (total ban on adult theatres may not be constitutional); *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (municipality may not ban "live entertainment" from its boundaries); *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (total ban on adult theatres may not be constitutional).

In sum, although Evanston has articulated some interests that we can characterize as legitimate, sometimes compelling, in every instance we find the legislative response to be overinclusive. Not only do we find the ordinance much broader than necessary to serve any compelling interest, it is not even rationally related to a legitimate interest. Evanston has failed to demonstrate the existence of any genuine issue of material fact. We therefore grant plaintiff's motion for summary judgment and hold that the special use permit requirement of Evanston's zoning ordinance, as it relates to churches, is invalid in that it violates the Equal Protection Clause.[6]

Neither party has briefed the issue of relief. Love Church in its complaint has prayed for declaratory, injunctive and monetary relief, including attorney's fees and costs under 42 U.S.C. § 1988. Since the basis of our holding is that the ordinance unreasonably discriminates between similarly situated uses, we think the proper remedy may be to require Evanston to permit churches wherever similarly situated uses are permitted, that is, in all business and commercial districts.[7] However, we want the benefit of the parties' views and would prefer that they structure the specifics of relief. Accordingly, we set this case for a status conference on September 24, 1987, at 10:30 a.m. The parties should come prepared to discuss the appropriate injunctive and monetary relief.

### CONCLUSION

We grant plaintiff's motion for summary judgment and declare the special use permit requirement of Evanston's zoning ordinance §§ 6–7–2–2, 6–7–3–2, as it applies to churches, to be violative of the Equal Protection Clause in that it discriminates on

the basis of religion. The case is set for a status conference on September 24, 1987, at 10:30 a.m.

---

**6.** Evanston claims that the ordinance cannot be struck down under the Fourteenth Amendment unless plaintiff proves Evanston had discriminatory intent. Def. Mem. at 4. Evanston is wrong. When a statute on its face discriminates on the basis of race, national origin, religion or fundamental rights, discriminatory intent need not be shown. *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880). Only when a law is facially neutral must any discrimination be proven purposeful. *Arlington Heights v. Metropolitan Housing Corporation,*

429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Evanston's ordinance on its face discriminates on the basis of religion and therefore there is no need to prove discriminatory intent.

**7.** We do not decide, nor should anything in this opinion by construed to suggest, that churches which house the temporarily homeless or have food cooperatives may not be subject to the special use technique. This issue is not before us.