**INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,**
Plaintiff,

v.

**CITY OF CHICAGO HEIGHTS,**
Defendant.

No. 96 C 4183.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 10, 1996.

John W. Mauck, Mark Robert Sargis, Christine M. Reidy, Joseph Thomas Witek, Mauck, Bellande, Baker & O'Connell, Chicago, IL, for International Church of the Foursquare Gospel.

Anthony Scariano, Raymond A. Hauser, John M. Izzo, Janet Lea Schwieters, Scariano, Kula, Ellch & Himes, Chtd., Chicago Heights, IL, for City of Chicago Heights.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

The City of Chicago Heights has fallen upon hard times. The Comprehensive Plan adopted in 1995 by the City describes the decline of the once vibrant commercial activity in the community and the flight of business to outlying malls. "The majority of existing retail and commercial service uses are found along Lincoln Highway/Route 30" (Comprehensive Plan at 12). Until recently that area included Kline's Department Store, the only department store in town. Despite City financial help through creation of a tax increment finance development district, reimbursement of Kline's of approximately $400,000 and approximately $500,000 expended by the City for land acquisition and demolition, Kline's did not survive. The area, as described in the testimony, is a patchwork of commercial uses and vacancies. A new supermarket has come in and there are three automobile dealerships. The City hopes to build on that base to create a stronger automobile-related commercial area that will provide much needed revenue to the community.

In the meantime, Kline's is vacant and its owner has had little success in trying to sell the property first as a going business and then as a vacant property. In 1993 the Cornerstone Christian Center (Church), a local subsidiary congregation of plaintiff, was burned out of its church building in Chicago Heights and it has since been meeting at the Bloom Trail High School. It now wants to purchase Kline's. The Church sought a special use permit for that purpose, which was denied. It now seeks preliminary injunctive relief. After a testimonial hearing Magistrate Judge W. Thomas Rosemond, Jr. recommended that injunctive relief be denied. We agree. The motion for a preliminary injunction or a temporary restraining order is denied.

The Church has a large congregation drawn from Chicago Heights and several nearby communities. All of its members drive to church services and activities. The Church has been making-do at Bloom Trail High School, but that is not a long term solution. It needs a permanent church facility, and we accept as a given that an adequate permanent facility is of considerable importance to the exercise of the congregation's religion. The Church's former location was 30,000 square feet. Kline's has 90,000 square feet, and it is evident that the Church does not need all that space for existing programs. It hopes, however, to keep growing and it has thoughts about how at least some of that additional space can be used. The site also has 275 paved and lighted parking places. The site is also at a very visible location, a matter of some interest to the Church. Finally, the price is attractive—$1,250,000. The Church would also have to spend an undetermined amount over some period of time to redevelop the space for program use. Rebuilding at its prior site would cost the Church about $1,800,000, and presumably the purchase and development of other sites would increase the expense beyond the cost of Kline's.

The sticking point is that Kline's is zoned B–2, and a church is a special use in all business and manufacturing areas. A church can be located as of right in any residential zone, and 60 per cent of the City is zoned residential. The City is also not saying "no" to relocation elsewhere in the business and manufacturing zones. It is just saying "no" to acquisition of Kline's, a major commercial property in the Lincoln Highway corridor it hopes to revive.

This is a rather abbreviated statement of the salient facts, which Judge Rosemond set forth in considerable greater detail. It will, however, with some amplification, serve as a basis for this court's conclusions.

■ As the Church recognizes, its broadest claim is under the Religions Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(a)–(b). Initially we must determine the likelihood that plaintiff will prevail on the merits, whether or not the Church will suffer irreparable harm if preliminary relief is denied, what irreparable harm the City may suffer if relief is granted, and the conse-

quences to the public interest if relief is granted or denied.

The RFRA was the congressional response to *Employment Div., Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Its enactment takes us back pre-*Smith. Mack v. O'Leary,* 80 F.3d 1175 (7th Cir.1996). The Act provides that government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability unless it demonstrates that application of the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. "[A] substantial burden on the free exercise of religion within the meaning of the Act, is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Id.* at 1179.

We do not believe the City's denial of a permit imposes a substantial burden within the meaning of the Act. It does not impose a forfeiture of a benefit or a penalty because of religious belief. The impact is not upon the content of religious practices but only upon where that religion may be practiced. Having a church facility is important to the Church, but specific location is not. The Church may purchase property without restriction in 60 per cent of the community, some of it bordering on substantial thoroughfares and, apparently, at least some is vacant. It can develop on contiguous lots, presently vacant or not. It can seek a special use permit for property elsewhere, and there is little to suggest that such a request would be rejected. It can rebuild at its old site. It can buy an existing vacant church, and the evidence indicates that it has not fully explored that option. The only thing it cannot do is use Kline's for a church. There are reasonable alternative areas of communication, *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), although those avenues may pose some economic inconveniences. *See Islamic Center of*

*Mississippi v. Starkville, Miss.,* 840 F.2d 293 (5th Cir.1988).

A principal reason that Kline's is attractive to the Church is that the price is a good one. It gets a large, indeed larger than it presently needs, facility for less than it would have to pay elsewhere. But the City is not restricting its location to some obscure corner or requiring that it be located in the most highly-priced part of the community, or insisting that it rehabilitate some substandard land at excessive cost. It requires only that the Church not locate at the Kline's site, a large commercial building in which it has invested substantial monies in the middle of a commercial corridor it is desperately seeking to support and encourage.

The effort to redevelop that commercial area may not succeed. Indeed, the price Kline's is willing to take indicates the difficulties the City faces—the Church is Kline's only real bird-in-the-hand. The RFRA does not, however, require the City to permit the Church to pick up a bargain because commercial redevelopment is sluggish. The City is concerned about a secondary effect, the negative impact of locating a large non-commercial use in what is envisioned as an area for contiguous commercial uses, thereby attracting the purchasing public. It has not developed any studies that verify that such a common location has a positive spill-over effect, *see Renton v. Playtime Theatres, Inc., supra,* but we believe the City could reasonably determine as a legislative decision that a church in Kline's is an incompatible use. *See Messiah Baptist Church v. County of Jefferson, Colo.,* 859 F.2d 820 (10th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989).

Additional expense, at least so long as it is not an inflated expense not imposed upon most landowners, is not a substantial burden within the meaning of the RFRA or in the context of the First Amendment. *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Messiah Baptist Church v. County of Jefferson, Colo., supra; Lakewood Ohio Congregation of Jehovah's Witnesses, Inc. v. Lakewood, Ohio,* 699 F.2d 303 (6th Cir.1983), *cert. denied,* 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), *Love Church*

*v. City of Evanston,* 671 F.Supp. 508 (N.D.Ill. 1987).

 We also agree with Judge Rosemond that the City has demonstrated a compelling governmental interest and that the zoning plan it has chosen is the least restrictive means of furthering that interest. It must create an economic underpinning. That means it must stimulate commercial activity. Indeed, the more desperate the endeavor the more economically attractive the area is to alternate land users and the more compelling the City's need to exclude them if it is to have any chance to succeed.

The Church also contends that the denial impermissibly restricts its freedom of speech and violates equal protection of the law. We think that what we have already said sufficiently indicates why we conclude that its free speech rights were not infringed and why the City's zoning decision was a permissible time, place and manner restriction. *See Christian Gospel Church v. City and County of San Francisco,* 896 F.2d 1221 (9th Cir. 1990), *cert. denied,* 498 U.S. 999, 111 S.Ct. 559, 112 L.Ed.2d 565 (1990). Likewise, we note that the permitted uses in B–2 zones are all commercial uses, many of which will encourage shopper traffic in the area during shopping hours. That includes meeting halls, which the evidence establishes are banquet hall facilities. We see, therefore, no basis for a claim of equal protection discrimination such as that raised in *Love Church v. City of Evanston,* 671 F.Supp. 515 (N.D.Ill. 1987), *rev'd on other grounds* 896 F.2d 1082 (7th Cir.1990), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990), and *C.L.U.B. v. City of Chicago,* 1996 WL 89241 (N.D.Ill.1996). Plaintiff rests heavily upon the view that it is being excluded because it does not pay taxes, but that is not the special use pattern disclosed in the zoning ordinance. Rather, it is being excluded because it is a non-commercial, and therefore incompatible, use, prompted by concerns of secondary effects. The Church can go elsewhere in the City and be tax-exempt, so long as it is willing to incur the same economic burdens shouldered by another property owner seeking to locate the facility of its choice in those areas.

If there were a violation of First Amendment rights we would presume irreparable harm. *Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689 (7th Cir. 1975). We conclude, however, that the Church's likelihood of prevailing on the merits is insubstantial, that the City's interest in reviving its most significant commercial area far overbalances the Church's interest in locating in Kline's instead of elsewhere in the community, and for that reason the public interest is best served by preserving what is, essentially, the status quo. The motion is denied.