LAKEWOOD, OHIO CONGREGATION
OF JEHOVAH'S WITNESSES, INC.,
Plaintiff-Appellant,

v.

CITY OF LAKEWOOD, OHIO,
Defendant-Appellee.

No. 82–3004.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1982.

Decided Feb. 2, 1983.

Sheldon Berns (argued), Cleveland, Ohio, for plaintiff-appellant.

William E. Blackie, Lakewood, Ohio, Henry B. Fischer (argued), Cleveland, Ohio, for defendant-appellee.

Before MARTIN, Circuit Judge, BROWN, Senior Circuit Judge, and SPEIGEL,* District Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The principal question presented in this appeal is whether a municipal zoning ordinance, which prohibits the construction of church buildings in virtually all residential districts in the city, violates the Free Exercise Clause of the First Amendment.[1]  Although many state courts have addressed

---

* Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The Clause provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."  It is applied to state and local governments through the due process clause of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

this issue,[2] no other federal circuit court has resolved the question.

The Lakewood, Ohio Congregation of Jehovah's Witnesses, as a representative of its individual members, sued the City of Lakewood. It challenged the City's comprehensive zoning plan which designates portions of the City for exclusive residential use. The Congregation argued that the ordinance infringed its first, fifth, and fourteenth amendment rights[3] and asked for damages pursuant to 42 U.S.C. § 1983. The district court carefully analyzed each asserted ground for relief but found them all to be without merit. On appeal, the Congregation has argued only its first amendment claim. We find the claim meritless and affirm the judgment of the district court.

Lakewood, Ohio is a municipal corporation located on the western border of Cleveland with a population of approximately 62,000 residents. It is an older suburban community composed primarily of one and two-family residences. Its commercial districts line two major east-west arteries through the City. The City is well developed and few vacant lots for either commercial or residential use remain within its five and a half square mile limits.

The 175-member Congregation of Jehovah's Witnesses, a non-profit corporation organized under Ohio law in 1972, has worshipped in Lakewood since 1944. The Congregation's church building, called Kingdom Hall, is currently located in a storefront on one of the main commercial arteries in the City. Kingdom Hall houses regular programs on Tuesday evenings for Bible study, on Thursday evenings for theocratic school meetings, and on Sunday morning for worship services. The central tenets and missions of the Jehovah's Witnesses are the distribution of literature to homes and on the street, and the conduct of in-home Bible studies for the purpose of instructing and encouraging people to apply biblical teachings to daily life.

In 1972 the Congregation decided to relocate Kingdom Hall and began searching for a site more conducive to worship and capable of accommodating a larger building. In early 1972 it entered into an option contract for and subsequently purchased a half-acre lot in northwest Lakewood. The lot fronts on Clifton Boulevard, a six lane east-west thoroughfare, and West Clifton Avenue, a north-south secondary route. The surrounding neighborhood consists of large, stately one and two-family homes, most of which were constructed before 1930. The design for the new Kingdom Hall featured a low, square building with a rustic stone exterior intended to blend with the neighboring properties. The design, insofar as possible, preserved the trees on the land and sheltered the forty-two car parking lot from homes nearby.

When the Congregation entered into the option contract for the lot, the area was zoned for residential use. However, the Board of Zoning Appeals had power to grant zoning exceptions. Before the Con-

---

**2.** California and Florida state courts have upheld municipal zoning ordinances which exclude churches from residential districts. However, many other states confronting similar ordinances have held them unconstitutional. *See* 82 Am.Jur.2d Zoning and Planning § 154 (1976). Courts striking down such ordinances have reasoned that the presence of churches in residential areas is beneficial to the public morals and welfare. Any exclusion of churches from neighborhoods is "arbitrary and unreasonable," hence unconstitutional. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). This reasoning is problematical because an ordinance permitting churches but excluding secular interests also protected by the First Amendment runs afoul of the Establishment Clause. *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Heffron v. ISKCON,* 452 U.S. 640, 652–653, 101 S.Ct. 2559, 2566–2567, 69 L.Ed.2d 298 (1981) (religious interests are not "superior to [others] having social, political and other ideological messages to proselytize"). On the other hand, not all political and social organizations have been traditionally viewed as beneficial to public welfare and morals. Therefore, the original rationale for permitting churches in residential areas fails.

**3.** For the sake of convenience and readability, this opinion will refer to the collective constitutional rights of members of the Congregation as "the Congregation's right."

gregation purchased the lot, the Board denied its application for an exception because a church on the corner would create traffic hazards, increase noise levels, potentially decrease property values, and cause various other problems. The Cuyahoga County Common Pleas Court and the Court of Appeals for Cuyahoga County affirmed the Board's decision.

In 1973, after the Congregation had purchased the lot, the City enacted a new zoning code, Lakewood Ordinance 55–78. The ordinance divided the City into the following districts:

| | |
|---|---|
| One Family District | R–1 District |
| One Family District | R–2 District |
| Two Family District | R–3 District |
| Multiple Family, Low Density | M–1 District |
| Multiple Family, Medium Density | M–2 District |
| Multiple Family, High Density | M–3 District |
| Business-Residential | BR District |
| Office District | B–1 District |
| Retail District | B–2 District |
| Industrial District | X District |
| Flood Plain | FFP District |

The Congregation's lot is designated R–2, limiting its uses to single family dwellings and "roomers." Church buildings are permitted only in M–3, M–2, B–R, and B–2 districts, which comprise approximately ten percent of the City's land.

In 1975 the Congregation again sought approval to construct a church on its lot. The Building Commissioner of Lakewood denied the Congregation a building permit because the area was zoned exclusively for residential use. The Cuyahoga County Common Pleas Court found the Lakewood zoning code to be constitutional. *Lakewood Ohio Congregation v. Lakewood, et al.,* 9 Ohio Ops.3d 314 (1978). However, on appeal the county appellate court ordered the lower court to determine whether or not the ordinance is constitutional as applied to the Congregation's lot specifically. The common pleas court had not reached a decision on the question at the time the Congregation filed this present suit in the Northern District of Ohio.

█ The question before us is whether the Lakewood zoning ordinance is constitutional. The Congregation claims that the ordinance infringes its right to freedom of religion by prohibiting it from constructing Kingdom Hall on the lot it owns. If the ordinance does infringe the Congregation's first amendment right, the City must justify the ordinance by a compelling governmental interest. *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). *See also Braunfield v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). If there is no first amendment infringement, we must determine whether the ordinance denies the Congregation the liberty to use its property without due process, violating the Fourteenth Amendment. According to traditional analysis a zoning ordinance does not violate the Due Process Clause if it is reasonable and substantially related to governmental public welfare concerns. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Whether the Lakewood ordinance should be subject to "compelling interest" or "rational basis" scrutiny depends on whether the ordinance in fact infringes the Congregation's right to free exercise of religion. Commonly, courts evaluate an infringement of religious freedom in terms of the burdens government imposes on the exercise of religious freedom. As a general rule, the greater the cost of practicing one's religion, the more probable that the statute creates an unconstitutional infringement.

The landmark cases of *Wisconsin v. Yoder* and *Sherbert v. Verner* depict primary examples of government actions which infringe religious freedom. In *Yoder* the price of religious observance was the imposition of criminal penalties. There, a Wisconsin statute compelled school attendance until the age of sixteen. The statute conflicted with the religious beliefs and practices of the Old Order Amish who withdrew their children from school after eighth grade to protect them from harmful worldly influences. The Supreme Court recognized:

The impact of the compulsory-attendance law on respondents' practice of the Amish religion is not only severe, but inescapable, for the Wisconsin law affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs.

406 U.S. at 218, 92 S.Ct. at 1534.

In *Sherbert* the Supreme Court identified severe, life-threatening economic sanctions as infringements of religious freedom. In that case, South Carolina denied unemployment benefits to a Seventh Day Adventist because she refused to accept available jobs. The state ignored the fact that the believer's religion prohibited her from accepting jobs which required Saturday attendance. The state ruling

> forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.
>
> \*     \*     \*     \*     \*     \*
>
> [To] condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties.

374 U.S. at 404–406, 83 S.Ct. at 1794–1795.

■  *Braunfield v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), presents an informative contrast to *Yoder* and *Sherbert*. *Braunfield* held that one's religious freedom is not infringed by a statute which makes religious observance more expensive. Orthodox Jewish merchants who rested from work on Saturday challenged the Pennsylvania Sunday closing law. That law effectively required Jewish merchants to make a financial sacrifice to practice their religion. However, the incidental economic burden was not unconstitutional because neither the purpose nor the effect of the law was to impede religious observation or to discriminate among religions. 366 U.S. at 607, 81 S.Ct. at 1148. Inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise.

■  Although a court's primary concern in determining whether religious freedom has been infringed must necessarily be the cost, economic or otherwise, attached to religious observance, case law highlights a secondary concern. The centrality of the burdened religious observance to the believer's faith influences the determination of an infringement. Religious observances in the form of beliefs are absolutely protected from governmental infringement. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Practices flowing from religious beliefs merit protection when they are shown to be integrally related to the underlying beliefs. In *Wisconsin v. Yoder*, the Amish people's decision to withdraw children from school accorded with a "fundamental tenet" of their religion. 406 U.S. at 218, 92 S.Ct. at 1534. The Seventh Day Adventist who refused Saturday employment followed "a cardinal principle of her religious faith." 374 U.S. at 406, 83 S.Ct. at 1795. In *Heffron v. ISKCON*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), members of the Krishna faith sought to practice their religious ritual of Sankritan, proselytizing through the distribution and sale of religious literature. The Supreme Court again recognized the important role the infringed ritual played in the propagation of the Krishna's faith. *See also United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Amish carpenter's faith forbid the payment of Social Security taxes).

Focusing again on the present case, it is clear that we must make a two-step inquiry to determine whether the Lakewood zoning ordinance infringes the Congregation's free exercise of religion. First, the nature of the religious observance at stake must be evaluated. And second, the nature of the burden placed on the religious observance must be identified.

The Congregation's "religious observance" is the construction of a church building in a residential district. In contrast to prior cases, the activity has no religious or ritualistic significance for the Jehovah's

Witnesses. There is no evidence that the construction of Kingdom Hall is a ritual, a "fundamental tenet," or a "cardinal principle" of its faith. At most the Congregation can claim that its freedom to worship is tangentially related to worshipping in its own structure. However, building and owning a church is a desirable accessory of worship, not a fundamental tenet of the Congregation's religious beliefs. The zoning ordinance does not prevent the Congregation from practicing its faith through worship whether the worship be in homes, schools, other churches, or meeting halls throughout the city. The ordinance prohibits the purely secular act of building anything other than a home in a residential district.

The burdens imposed on the Congregation by the ordinance are an indirect financial burden and a subjective aesthetic burden. The Congregation may build a church in Lakewood only in commercial or multifamily residential district. Land in these districts is more expensive and, the Congregation claims, less conducive to worship than the area where the lot is located. However, this is not a case where the Congregation must choose between exercising its religious beliefs and forfeiting government benefits or incurring criminal penalties. No pressure is placed on the Congregation to abandon its beliefs and observances. While it is true that the Congregation would face penalties if it began building on the proposed site, the penalties would not have the purpose or the effect of dissuading the Congregation from practicing its faith. In short, the burdens of the ordinance are the increased cost of purchasing land and the violation of the Congregation's aesthetic senses, if the Congregation chooses to build a new church in Lakewood.

Contrary to the Congregation's arguments, this case does not present a situation similar to *Keego Harbor Company v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981). In *Keego Harbor* a zoning ordinance effectively excluded adult movie theaters from the city by setting severe spacing limitations. This court found the ordinance unconstitutional because its purpose and ef-

fect were to eliminate from the city the exercise of a first amendment right. The Congregation argues that the Lakewood ordinance effectively eliminates religious worship from the city because it limits the location of new churches to ten percent of the City.

We disagree. The effect of the Lakewood ordinance is not to prohibit the Congregation or any other faith from worshipping in the City. Although the Congregation may construct a new church in only ten percent of the City, the record does not indicate that the Congregation may not purchase an existing church or worship in any building in the remaining ninety percent of the City. Furthermore, unlimited numbers of churches may be constructed in the appropriately zoned areas, confined only by the number of lots. The lots available to the Congregation may not meet its budget or satisfy its tastes but the First Amendment does not require the City to make all land or even the cheapest or most beautiful land available to churches. Unlike the Keego Harbor ordinance, the Lakewood ordinance does not exclude the exercise of a first amendment right, religious worship, from the City. *Compare Young v. American Mini Theaters,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) *with Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

The Supreme Court's statement in *Braunfield* accurately summarizes our conclusion about the nature of the Congregation's interest and the nature of the City's burden on that interest. The Lakewood ordinance "simply regulates a *secular activity* and, as applied to the appellants, operates so as to make the practice of their religious beliefs *more expensive.*" 366 U.S. at 605, 81 S.Ct. at 1146 (emphasis added). It does not pressure the Congregation to abandon its religious beliefs through financial or criminal penalties. Neither does the ordinance tax the Congregation's exercise of its religion. Despite the ordinance's financial and aesthetical imposition on the Congregation, we hold that the Congrega-

tion's freedom of religion, as protected by the Free Exercise Clause, has not been infringed.

The answer to the threshold question is that there is no infringement of religious freedom. Accordingly, the constitutionality of the zoning ordinance must be measured by a due process analysis. The landmark zoning case is *Village of Euclid v. Ambler Realty Company,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). In *Euclid* the Supreme Court upheld the validity of a comprehensive zoning plan which excluded commercial activities from residential districts. The plan deprived the landowner/plaintiff some freedom to use the land for all purposes. The Court held zoning ordinances to be legitimate exercises of a municipality's police power if the ordinances are not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." 272 U.S. at 395, 47 S.Ct. at 121. The Court also established a legal presumption in favor of constitutionality "[i]f the validity of the legislative classification for zoning purposes be fairly debatable." 272 U.S. at 388, 47 S.Ct. at 118. Finally, the *Euclid* Court recognized, "The inclusion of a reasonable margin to insure effective enforcement, will not put upon a law, otherwise valid, a stamp of invalidity." 272 U.S. at 392, 47 S.Ct. at 120.

Subsequent cases have identified a locality's specific prerogative to create exclusive residential districts for the health and well-being of its citizens. The Supreme Court acknowledged a village's police power as "ample to layout zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). In *Belle Terre* the village limited the number of cohabiting, non-related individuals to two in an effort to create a "quiet place where yards are wide, people few, and motor vehicles restricted." 416 U.S. at 9, 94 S.Ct. at 1541. In *Memphis v. Green,* 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981), the Court upheld a city ordinance, against challenges of racial discrimination, which diverted the flow of commuter traffic from a residential neighborhood. Again, the Court recognized that a municipality may, within constitutional limits, zone to preserve a peaceful residential sanctuary for its citizens. The Memphis ordinance conformed to constitutional limits because it was not arbitrary or irrational. *See also Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (denial of building permit for multi-family low income housing in accordance with rational zoning scheme).

■ Given the standard of review established in *Euclid* and its progeny, and the minimal burden on Lakewood to justify its zoning ordinance, we hold that the ordinance does not violate the Due Process Clause. The District Court found that the City created exclusive residential districts to control traffic congestion and off-street parking in secluded residential areas. The exclusion of all uses except residential substantially minimizes congestion, noise and confusion due to motor vehicle traffic. The City has legitimately and rationally exercised its police power to preserve a "quiet place where yards are wide, people few, and motor vehicles restricted." *Belle Terre,* 416 U.S. at 9, 94 S.Ct. at 1541.

The Congregation contends that the *Euclid* rationality test and deference to legislative enactments are inapplicable to the present situation. First, the Congregation cites *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), for the proposition that an ordinance which regulates a fundamental right must be more than merely rationally based; it must be justified by a compelling governmental interest. *Moore* is inapposite. As established earlier, the Lakewood ordinance does not infringe or regulate the fundamental right of religious freedom. Additionally, in *Moore* the city attempted to define "family" with the effect of intruding into and severing family relationships. In contrast to *Moore* the Lakewood ordinance makes no attempt to define "religion" or "church" to distinguish among religious

uses. Second, the Congregation contends that the ordinance is not narrowly tailored to fit the City's articulated purposes. The Congregation relies on a string of cases for its least restrictive means argument, including *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *Wisconsin v. Yoder,* and *Sherbert v. Verner.* The cases are inapplicable to the present situation because the Congregation has failed to demonstrate the requisite infringement of a fundamental right. *If* an ordinance infringes a fundamental right, *then* it must be justified by a compelling governmental interest employing the least restrictive means to achieve its purposes. *Sherbert v. Verner,* 374 U.S. at 407, 83 S.Ct. at 1795; *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 74, 101 S.Ct. 2176, 2185, 68 L.Ed.2d 671 (1981) (ordinance which excludes live entertainment violates First Amendment). Concededly, the City has drawn broad lines to protect its tranquil neighborhoods but these lines are a "reasonable margin to insure effective enforcement" of quiet residential zones.

In summary, the Lakewood ordinance is constitutional although it creates exclusive residential districts and thereby prohibits the construction of church buildings in the districts. The facts of the present case show that the ordinance does not infringe the Congregation's religious freedom. Furthermore, the ordinance does not offend the Due Process Clause because it is a legitimate exercise of the City's police power. The ordinance merely frustrates the Congregation's desire to locate itself in a more pleasant, more convenient and less expensive location. Such desires, however, are not protected by the Constitution.

Judgment affirmed.