MESSIAH BAPTIST CHURCH, a Colorado non-profit corporation; Thom Moore; Ardel Moore; Donna L. Nive; and Jess Paulsen, Plaintiffs,

v.

The COUNTY OF JEFFERSON, STATE OF COLORADO, The Board of County Commissioners of the County of Jefferson, State of Colorado; Hal Anderson, Bob Clement, and James Martin, not individually but as members of the Board of County Commissioners of the County of Jefferson, State of Colorado, Defendants.

Civ. A. No. 80–M–764.

United States District Court, D. Colorado.

April 21, 1987.

Ronald S. Loser, J. Scott Needham, Loser, Davids, Magoon & Fitzgerald, P.C., Denver, Colo., for plaintiffs.

Gay B. Ummel, Asst. Co. Atty., H. Lawrence Hoyt, Golden, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

On June 13, 1980, Messiah Baptist Church ("Church"), a non-profit corporation organized for operating as a church,

and individual plaintiffs representing a class consisting of all persons who were members of the Church on June 14, 1978, filed a complaint for damages resulting from the denial of a special land use application on that date. The claims are brought under 42 U.S.C. § 1983 within the jurisdiction provided by 28 U.S.C. § 1343. The defendants are the county and the county commissioners ("County") who established the challenged zoning regulations.

The plaintiffs filed a motion for partial summary judgment declaring infringement of rights protected by the First and Fourteenth Amendments to the United States Constitution, reserving the issue of damages. The defendants moved for summary judgment of dismissal. By a memorandum opinion and order entered on June 2, 1982, this court granted the defendants' motion, holding that all claims arising before June 14, 1978, were time barred and that the denial of the special use application on that date was based upon valid, neutral criteria, fairly applied to the Church property. Accordingly, the denial was considered as a reasonable restriction of the plaintiffs' First Amendment rights. The plaintiffs appealed only the statute of limitations question. The Tenth Circuit Court of Appeals reversed the dismissal of the claims and remanded for further proceedings. The parties have renewed their respective motions for summary judgment based on stipulated facts and documents. The questions presented are whether two county zoning regulations are valid exercises of the county's power to regulate land use. Oral argument was heard on April 10, 1987.

In July, 1974 the Church acquired 80 acres of land in Jefferson County for the purpose of building a church and other related facilities. That land was then and has continuously been zoned Agricultural Two ("A-2"). The resolution establishing the A-2 district stated that the "Agricultural Two Zone District is designed to allow for areas for general farming, ranching, intensive agricultural uses and agriculturally related uses while protecting the surrounding area from any harmful effects." The uses by right in an A-2 district were limited to one family dwellings, general farming, poultry hatcheries, greenhouses and nurseries, forestry farming, feed lots, fur farms, dog kennels and veterinarian hospitals. Certain other uses, such as sewage treatment plants, telephone and electric substations and water storage facilities were allowed as "special uses," upon approval by the Planning Commission and the Board of County Commissioners. In late September or early October, 1974, the Church applied for a building permit to build a single structure to be used for worship purposes, administrative offices and for school purposes. That application was denied because the A-2 zone district did not permit the use of land for a church or church school.

In July, 1976, the Board of County Commissioners amended the the A-2 zone district regulations to allow the use of land within an A-2 district for "Churches, rectories, parish houses and church schools," upon approval of the Planning Commission and the Board of County Commissioners. The Church filed an application for such a special use, which was denied by the Planning Commission after a public hearing. The Church then filed suit in state court alleging that the County denied the Church its right to due process and freedom of religion. The court dismissed that action, holding that the exclusive remedy was judicial review under Colo.R.Civ.Pro. 106(a)(4), which was time barred.

## A. The 1974 Zoning Resolution

The plaintiffs contend that the exclusion of churches from an A-2 zone district in the 1974 Zoning Resolution directly restricts the free exercise of religion, and that the County has failed to demonstrate any compelling need to restrict religious uses in such a manner or that such legislation is the least restrictive means of achieving any proper public goal. In support of their argument, the plaintiffs cite *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), where the Supreme Court held that a ban on live entertainment violated the First Amend-

398

ment because the Town failed to demonstrate a justification for the exclusion. There was no evidence to support the conclusion that live entertainment was incompatible with other commercial uses which were permitted, or that such a use presented parking or police problems different in either character or degree from problems presented by authorized uses. The Court concluded that lacking such evidence the Town could not justify such an interference with First Amendment rights.

The defendants point to three factors in support of their assertion that exclusion of churches as a use by right from the A–2 district does not violate the plaintiffs' constitutional right to freedom of religious worship. First, they argue that many other zone districts within Jefferson County provide places in which to locate a church as a use by right. Secondly, the plaintiffs have admitted that their church continues to operate and that they have been able to worship as they choose. Finally, the defendants note that the plaintiffs have not alleged that their property has any particular religious significance or that they were denied access to their property for the exercise of religious beliefs. Rather, the plaintiffs have alleged that they were denied a building permit for a structure to be used as a church. In support of their position, the defendants cite *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303 (6th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), and *Grosz v. City of Miami Beach*, 721 F.2d 729 (11th Cir.1983).

■ These decisions came after this court's June 2, 1982 memorandum opinion and order. In the legal analysis made at that time, this court accepted the view that because the denial of the special use permit application precluded the plaintiffs from constructing a facility designed for use in religious worship and related activities, the defendants must demonstrate a governmental interest of sufficient magnitude to override the interest protected by the free exercise clause. I am now persuaded that my former analysis is incorrect. Following the guidance of the Sixth and Eleventh Circuits, I now conclude that the complete exclusion of churches and their related activities from the A–2 zone district did not infringe on any rights protected by the First Amendment.

The Resolution did not prevent the plaintiffs from practicing their faith, it merely prohibited the purely secular activity of constructing a building in one area of the county. When the plaintiffs purchased their property, the A–2 resolution at issue in this case was already in effect. The Church could have purchased property in another district within the county where church uses were permitted. The court in *Lakewood* held that when a zoning ordinance imposes only an indirect economic burden and a subjective aesthetic burden, that ordinance does not unduly burden religious freedom. The A–2 Resolution at most imposes indirect economic burdens on the plaintiffs and, therefore, is not invalid on First Amendment grounds.

Citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the plaintiffs argue that the Resolution is invalid because there is no substantial relation between exclusion of churches and important police power goals. Specifically, they argue that the "A–2 Regulations allow a multitude of uses which are *at least* as intensive as those appurtenant to a church, causing identical impact problems." Plaintiffs Reply Brief, p. 4.

Churches are subject to reasonable zoning and other police power regulations. *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). The classification of land uses is a legislative function, *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974), and a particular regulation will be upheld if it is rationally related to legitimate state concerns. *Id.* at 8, 94 S.Ct. at 1540; *Village of Euclid*, 272 U.S. at 388, 47 S.Ct. at 118. The state legislature has specifically directed the counties to enact zoning regulations for the purpose of "promoting the health, safety, morals ... of the present and future inhabitants of the state, ... classifying land uses and

distributing land development and utilization ..." C.R.S. 30–28–115(1). In Section 1 of the Resolution, the County stated that the resolution was enacted for the purposes set forth in the state statute. Additionally, the A–2 district was established to allow for areas for "general farming, ranching, intensive agricultural uses and agriculturally related uses while protecting the surrounding land from any harmful effects." To effectuate that purpose, the County prohibited land within an agricultural district to be used for institutional purposes, such as churches and schools. The uses permitted within an A–2 district are rationally related to the purpose of maintaining an agricultural district.

### B. The 1976 Zoning Resolution

The plaintiffs argue that the 1976 amendment to the A–2 regulation is invalid on procedural due process grounds because the special use provisions involve an unconstitutional delegation of discretionary power to the decision-making body. The plaintiffs urge this court to invalidate the resolution under *Beaver Meadows v. Board of County Commissioners*, 709 P.2d 928 (Colo.1985). There, a developer submitted a proposal to create a planned unit development ("PUD"). The Board of County Commissioners of Larimer County conditioned approval of the PUD on the developer providing improvements to an access road and providing for emergency medical services. The court first considered whether the state had authorized the county to consider the adequacy of access in evaluating a PUD application. After concluding that it had, the court then considered whether the county had exercised its statutory authority by enactment of regulations sufficiently specific to impose the condition of road access improvements. The court explained that "there must be sufficient standards and procedural safeguards involved in the delegation and subsequent implementation to ensure that any action taken by a county in response to a land use proposal will be rational and consistent and that judicial review of that action will be available and effective." *Id.* at 936. This principle is satisfied if "the general standards and re-

quirements for county land use planning and control outlined in the state statutes and encompassing the relevant subject matter, when *coupled with* the procedural protections in the state statutes *and with* the regulations at the county level, are sufficiently detailed to provide all users of land with notice of the particular standards and requirements imposed by the county for PUD approval." *Id.* at 936.

The court stated that although the state statutes authorized the county to consider road access in approving a PUD application, standing alone, they were too general to serve as authority for such a requirement. Turning to an examination of the county regulations, the court concluded that they were sufficiently detailed to reflect the intent that the Board consider the adequacy of access roads. However, the court held that the regulations were not sufficiently definite to implement that intent. "The regulations are devoid of standards by which the adequacy of an access road can be evaluated and remedial measures prescribed. There are no criteria with respect to design considerations such as grades, sight distances, width, shoulders, vertical or horizontal curves, drainage, or types of surfaces." *Id.* at 937.

■ Under the analytical framework of *Beaver Meadows*, the 1976 resolution does not involve an unconstitutional delegation of discretionary power. First, it is clear that the state statutes and county regulations contemplate that the Board may consider various factors in regulating land use. The county is specifically authorized to classify land uses and distribute land development and utilization. C.R.S. 30–28–115(1). Section 1 of the county zoning resolutions provides that the resolutions are:

enacted for the purpose of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of Jefferson County by lessening the congestion in streets or roads, securing safety from fire and other dangers, providing light and air, avoiding undue congestion of population, facilitating the adequate provision of transportation, water, sewage,

schools and other public requirements, securing protection of the tax base, and by other means in accordance with a Comprehensive Plan.

Secondly, while the state statutes are too broad to be used as decisional criteria upon which to evaluate a special use application, the county regulations provide greater detail. The resolution provides that the intent of the A–2 classification is "to allow areas for general farming, ranching, intensive agricultural uses and agriculturally related uses while protecting the surrounding land from any harmful effects." This language is given meaning, and the Board is given guidance, by the specific requirements set forth in the A–2 district regulation. On land abutting a residential district, for example, no use is permitted which causes objectionable odor or dust. All sanitation systems must be approved by the Jefferson County Health Department. There are lot size and width requirements, and setback regulations. These specific requirements are sufficiently definite to enable the Board to implement the intent behind the resolution to provide an agricultural district within the county, and to provide owners of land with notice of standards for use of their land. It is noteworthy that the denial of the special use application by the Planning Commission was judicially reviewed in this court and found to be rational and consistent with the county's land use planning and control. Accordingly, the 1976 resolution is not invalid on procedural due process grounds.

Upon the foregoing, it is

ORDERED that the plaintiffs' motion for summary judgment is denied, and it is

FURTHER ORDERED that the defendants' motion for summary judgment is granted and this civil action is dismissed.