INTERNATIONAL EATERIES OF AMERICA, INC., a Florida corporation, d/b/a "Thee Dollhouse III", Plaintiff,

v.

BROWARD COUNTY, a political subdivision of the State of Florida, Defendant.

No. 88–6472–Civ.

United States District Court, S.D. Florida.

Dec. 15, 1989.

Law Office of Bruce L. Randall, Ft. Lauderdale, Fla., for plaintiff.

Barbara A. Hall, Asst. County Atty., Ft. Lauderdale, Fla., for defendant.

## MEMORANDUM OPINION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

THIS CAUSE was tried non-jury before the Court at which time testimony and evidence were adduced by both parties. Also, by stipulation and agreement, the parties agreed that the prior record and all exhibits in the earlier related action which included the same parties, that case being 86–6348–Civ–Aronovitz (hereinafter referred to as *Dollhouse I*), be taken into consideration by this Court through judicial notice, including the Final Judgment and Memorandum Opinion of this Court in that case. (See also Paragraph Number 4 of the Joint Pre–Trial Stipulation.) Likewise, in the course of the earlier case, this Court upon plaintiff's motion, visited the location and the surrounding area of the subject property involved in this litigation in the company of counsel for both sides, and viewed in open Court, a video tape presented by plaintiff of the surrounding area. Additionally, at the trial of this action (hereinafter referred to as *Dollhouse II*), further evidence was adduced and received beyond that offered in *Dollhouse I*. The Court has considered all the evidence, oral argument, memoranda of law, the viewing of the location, and being otherwise fully advised in the premises, makes and enters herewith its Findings of Fact and Conclusions of Law.

### Nature of Prior Proceedings and Relationship Hereto

*Dollhouse I* raised two separate and independent issues; namely, (1.)—Whether the "special uses" ordinances applicable to adult nightclubs was Constitutional as applied to the location of Thee Dollhouse III in preventing its use in presenting non-obscene, nude dancing as the primary form of entertainment for its customers; and (2.)—Whether or not the distance ordinances prohibiting the location of such use within 500 feet of a residentially-zoned district or within one thousand (1,000) feet of a church, kindergarten, nursery, elementary, middle or high school or day care center were either facially or otherwise unconstitutional.

*Dollhouse I* is a published opinion found under the title and citation: *International Eateries of America, Inc., a Florida corporation, d/b/a "Thee Dollhouse III" v. Broward County, a political subdivision of the State of Florida,* —— F.Supp. ——,

(United States D.J., Aronovitz, Southern District of Florida, 1989), and is also found as a part of the record in this case. That Memorandum Opinion and the Final Judgment issued thereon are made a part of these proceedings by agreement of the parties and judicial notice thereof is taken by this Court. Therein, this Court found that the special uses ordinance was unconstitutional as applied to this plaintiff because there was only one location in all of Broward County, Florida already zoned B–2B, and without an application for permission to the Broward Zoning Board and the Broward County Commission no location could be utilized for the designated use. However, in that same opinion, this Court found that both the distance ordinances as to churches, schools, etc., and residential districts are facially valid.[1]

Now in this action (*Dollhouse II*), the plaintiff first applied to Broward County Zoning Board and County Commission for a variance from the distance requirements and having been denied same, seeks again to attack the facial and applied Constitutionality of the distance ordinances, arguing:

A) that the provision of the ordinance permitting a waiver from the residential distance prohibition and

B) the provision requiring a one thousand (1,000) foot separation between an adult business and a church, school, etc., are an invalid prior restraint, unconstitutionally vague and overbroad, and a substantial restriction of First Amendment Rights. Among other defenses, defendant asserts that the Constitutionality of the distance ordinances has already been decided in Dollhouse I and therefore the issues raised herein are *res judicata.*

### Basis of Federal Jurisdiction

This complaint for permanent injunction, declaratory judgment and attorney's fees is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

### FINDINGS OF FACT

Some of the following Findings of Fact contained in Dollhouse I are still pertinent and relevant hereto, and others are based on the evidence heard in this case.

1. Plaintiff, International Eateries of America, Inc., a Florida corporation, operates a restaurant and nightclub at 3561 North Federal Highway in *unincorporated* Broward County, Florida, known as "Thee Dollhouse III. Thee Dollhouse III presents non-obscene, nude dancing as the primary form of entertainment for its customers.

2. Defendant Broward County has a population in excess of one million persons, and occupies more than 410 square miles on Florida's southeast coast, with the city of Fort Lauderdale being the County seat. Within the unincorporated area of Broward County, which is involved in this litigation, there are approximately 150 square miles.

3. Thee Dollhouse III presents non-obscene, nude dancing as the primary form of entertainment for its patrons (the parties have so stipulated at paragraph 5a of the Joint Pretrial Stipulation), previously incorporated herein as Finding of Fact paragraph number 1. The County never submitted evidence to the Court as to the nature or type of nude entertainment, nor whether it was lewd or lascivious, nor any description of the nature or type of dancing. The parties have agreed that under the ordinances in effect, the entertainment at Thee Dollhouse III is "non-obscene, nude dancing." Therefore, no finding of fact is made herein with regard to the exact nature or type of nude dancing. This same finding still pertains to the instant proceeding.

---

**1.** At the time *Dollhouse I* was before the Court, the plaintiff had applied for zoning variances to Broward County from both the "special uses" ordinances and the "distance requirements" ordinances. Broward County denied the special uses and therefore considered the application for the distance requirements as moot and did not rule thereon. As noted herein, this Court later found the special uses ordinances Unconstitutional as applied and thereupon, plaintiff reapplied for a ruling with regard to the variance and distance requirements. Therefore, technically, that ruling of facial invalidity was not then timely. Hence it is revisited here.

4. Additionally, neither party has chosen to introduce any factual matter or issue of law relating to the applicability or non-applicability of the dispensing of alcoholic beverages and what effect, if any, under the Twenty–First Amendment this might or could have upon the rights of the County to exercise some zoning restraint under its police power. Therefore, again, there is no finding of fact made herein or conclusion of law premised upon the aforegoing, since the parties both seemingly do not consider it relevant and have not presented it to the Court as a matter to be determined.[2] This same finding still pertains to the instant case.

5. Although no special zoning studies seem to have been made as a predicate for the adoption of the zoning ordinances, testimony and evidence were adduced that they are modeled after the City of Detroit ordinances.

6. Thee Dollhouse III is located within 1,000 feet of a church, the Kingdom Hall of Jehovah's Witnesses, at 3765 N.E. 18th Terrace. The two buildings are approximately 885 feet apart. The business is also located within 500 feet of a residential district to the east, in the incorporated municipality of Lighthouse Point. There are three residential properties within 500 feet of the nightclub. As to one of those properties, only a portion of the backyard is within 500 feet of Thee Dollhouse III. As to the other two, the buildings themselves are within 500 feet.

7. On December 15, 1987 Thee Dollhouse III filed a petition with the County's Building and Zoning Enforcement Division seeking an automatic waiver of the 500 foot residential district prohibition, pursuant to Section 39–225(b). That provision reads:

It shall be unlawful hereafter to establish any designated use within unincorporated Broward County if the proposed location is within 500 feet of a residentially zoned district. This prohibition

shall be waived upon the presentment to the building and zoning enforcement division of a written petition requesting such waiver, signed by 51 percent of all those persons owning real property, residing or operating or managing a business within 500 feet of the proposed location of the designated use. The circulator of the petition requesting a waiver shall subscribe and swear to an affidavit attached to the petition that the circulator personally witnessed the signatures on the petition and that the signatures were affixed to the petition by the persons whose names appear on the petition. Said petition shall bear at the top of each page thereof a typewritten title in substantially the following form:

"The undersigned hereby request a waiver from the Building and Zoning Enforcement Division of Broward County, Florida, that shall permit the establishment and location of a (an) (state specifically which designated use is sought to be established) within 500 feet of my real property, residence or business."

Building and zoning enforcement division shall carefully investigate the petition and signatures on the petition to verify that the petitioners do in fact own real property, or reside or do business in a residentially zoned district within 500 feet of the proposed designated use. Measurement of the 500 feet shall be made in accordance with subsection (c) hereof.

8. The petition filed by plaintiff contained the signatures of more than 51% of those persons residing, and owning residential real property, within 500 feet of Thee Dollhouse III, but did not contain signatures of any persons operating or managing a business, or owning commercial real property, within 500 feet. The petition was rejected by the County because it did not contain any signatures from the latter group. Plaintiff then requested a waiver of the distance restric-

---

**2.** *Cf. International Food & Beverage Systems v. City of Fort Lauderdale,* 794 F.2d 1520 (11th Cir.1986) (remanding to district court to consider, among other things, the Twenty–First Amendment issue, where the ordinance in question specifically related to establishments that both served alcoholic beverages and provided nude entertainment).

tions from the County's Planning and Zoning Board and it was denied. The Broward County Commission likewise denied the waiver of distance restrictions.

9. The petition contained the signatures of the two owners of a duplex, and six signatures of residents of that duplex. The two owners were Michael J. Peter, an owner of International Eateries of America, Inc. and Centerline Associates, Inc., whose president is James Williams. James Williams circulated the petition and also signed the petition as president of Centerline Associates, Inc. Centerline Associates, Inc. is a company which does construction and maintenance work for plaintiff and for Michael J. Peter. All of the residents of the duplex who signed the petition were current or previous employees at Thee Dollhouse III.

10. Said duplex was purchased in June or July of 1987 for $125,000.00 and sold in January of 1989 for $125,000.00.

11. The petition, which was signed by eight people, did not include any signatures of owners or residents of the second duplex apartment, nor did it include any signatures of owners of property within 500 feet of Thee Dollhouse III on which businesses operate, or signatures of operators or managers of those businesses. Shirley Maurer, Chief Zoning Inspector for Broward County, testified that she received the petition from plaintiff and that she knew there to be many more than 15 persons in the group or universe of potential signators. Ms. Maurer's knowledge of the businesses in the area of Thee Dollhouse III was based on her review of zoning certificates in the area which her office maintains for businesses operating in unincorporated Broward County. The petition was rejected by Broward County on or about December 22, 1987, because it did not contain the required signatures.

12. The waiver provision of Section 39–225(b) has been interpreted by Broward County Building and Zoning Enforcement Division to require signatures of 51% of a set of persons which includes all owners of property within 500 feet and all residents or business operators or business managers within 500 feet. Shirley Maurer testified that the provision had been interpreted and applied the same way to other petitions and that waivers had been granted based upon such petitions.

13. Plaintiff applied to the Broward County Board of adjustment for a variance from the 1,000 foot and 500 foot distance requirements. Shirley Maurer testified that the standards considered by the Board of Adjustment in granting or denying variances are:

a) whether special conditions exist on the property which do not exist on other property in the same district,

b) whether the need for the variance results from a self-imposed hardship, and

c) whether the variance applied for is the minimum variance that will permit the reasonable use of the land.

14. On June 2, 1988, the Board of Adjustment denied plaintiff's request for a variance because the need for the variance was caused by plaintiff's own actions. Plaintiff opened and began operation of Thee Dollhouse III in violation of the existing zoning provisions.

15. On June 21, 1988, plaintiff filed this action for declaratory judgment, permanent injunction and attorney's fees.

16. The only evidence presented by plaintiff was through James Williams concerning the circulation and submission of the petition and the purchase and sale of a duplex.

17. Plaintiff introduced no evidence regarding Broward County's treatment of the plaintiff with respect to the 1,000 foot church distance provision, although the plaintiff has stipulated that the business is within 1,000 feet of a church.

18. The plaintiff did proffer evidence regarding the value of residential property in the same subdivision as the church, although it was acknowledged that none of these residential properties is within 500 feet of the adult nightclub.

**1574**

### CONCLUSIONS OF LAW

1. In Dollhouse I, this Court previously held that Sections 39–225 through 39–229 of the Broward County Code of Ordinances (the "distance ordinances") are facially valid time, place and manner regulations *Id.* at 18. The sole issue before the Court in this case is Broward County's treatment of plaintiff with respect to the distance ordinances.

2. Plaintiff did not introduce any evidence to establish that Broward County unconstitutionally applied the church distance provision to plaintiff, or that the application of the provision has an unconstitutional effect. Rather, the plaintiff stipulated that it was within 1,000 feet of a church. The testimony of Shirley Maurer established that plaintiff applied for a variance of the church distance provision, and that the application was denied. No evidence was presented to establish that Broward County acted arbitrarily, capriciously, or in any way unconstitutionally to enforce the church distance provision.

3. The evidence introduced in *Dollhouse I,* by Leigh Kerr and the study he prepared, established that there are 26 potential sites in unincorporated Broward County in which adult businesses may operate without violating the distance provisions. Therefore, the evidence does not establish that the church distance provision has an unconstitutional effect on plaintiff. *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 53, 54, 106 S.Ct. 925, 931, 932, 89 L.Ed.2d 29.

4. The only evidence introduced by the plaintiff regarding the application of the residential distance requirement was that of James Williams regarding the petition submitted to obtain a waiver of the requirement, the petition itself, and letters pertaining to the petition. Mr. Williams' testimony established that two residences were within 500 feet of Thee Dollhouse III, and that plaintiff attempted to comply with the petition requirements by having one of its principals and another entity buy one of the two residences and obtain the signatures of plaintiff's own employees as residents. Plaintiff did not attempt to obtain signatures of any businesses within 500 feet of its location, and did not obtain signatures from the other residential property.

5. Shirley Maurer testified that the waiver provision has consistently been interpreted to require signatures of 51% of a universe of people which includes all of those listed in the ordinance, that it was so applied to plaintiff, and that other businesses have obtained waivers. Ms. Maurer also testified that property owners, residents and business operators all have an interest in the location of adult uses near them, and that those interests are different. This Court concludes that the waiver provision as interpreted by the Building and Zoning Enforcement Division has not been arbitrarily or capriciously applied to this plaintiff.

6. Live entertainment, as well as political and ideological speech is protected by the First Amendment. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970). "Nudity alone" does not place otherwise protected material outside the protection of the First Amendment, although obscenity is not protected by the First Amendment. *Cf. Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974) *with Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

7. The Eleventh Circuit Court of Appeals recently addressed the Constitutionality of an ordinance that limited nude dancing. *International Food & Beverage Systems v. Fort Lauderdale,* 794 F.2d 1520 (11th Cir.1986). The court there stated: "[w]e may take it for granted that nude dancing is Constitutionally protected expression, at least if performed indoors before pay customers and not ... before casual viewers." *Id.* at 1525. *See also Krueger v. Pensacola,* 759 F.2d 851, 854 (11th Cir.1985).

8. Although the power of local governments to zone and control land use is unquestionably broad and within their fundamental police powers, when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial governmental interest. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). In determining the appropriate level of scrutiny to be applied to a challenged ordinance, a critical inquiry is whether the ordinance is aimed at suppressing protected expression or whether its primary goal is a matter within the legitimate police powers of the governmental entity which has a secondary or incidental impact on protected speech. *Compare Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (striking down a law that prohibited expression by displaying any flag, badge or banner as content-based as opposed to content-neutral); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 2232–33, 65 L.Ed.2d 319 (1980) *with Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding ordinance that prohibited the posting of signs on public property as content-neutral).

9. The Supreme Court has consistently held that the First Amendment forbids the government to regulate speech in order to exclude the expression of certain points of view from the marketplace of ideas. *See Bolger v. Youngs Drug Products,* 463 U.S. 60, 65, 72, 103 S.Ct. 2875, 2879, 2883, 77 L.Ed.2d 469 (1983); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 2332–33, 65 L.Ed.2d 319 (1980); *Carey v. Brown,* 447 U.S. 455, 462–63, 100 S.Ct. 2286, 2291–92, 65 L.Ed.2d 263 (1980). The total suppression of protected ideas subjects the law to strict scrutiny and

places the burden on the governmental entity to show a compelling state interest in support of its law. *See Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

10. In contrast, a viewpoint-neutral regulation may be analyzed within the framework established by the Supreme Court in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968):

[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an <u>important or substantial governmental interest;</u> if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. (underscoring supplied)

*Id.* at 377, 88 S.Ct. at 1679. As the Court's language indicates, a content-neutral regulation will be subjected to a somewhat heightened, though not strict, standard of scrutiny. In this situation, the ordinance will be analyzed as a time, place or manner regulation. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).[3]

11. The Supreme Court has held, in the context of a distance ordinance, that a municipality can differentiate between adult theaters and other theaters in attempting to combat the "secondary effects" of such theaters, i.e., preserving the character of the neighborhood. The Court reasoned:

[W]e have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that

---

3. The Supreme Court has stated that the four-factor standard of *O'Brien* is essentially the same standard applied to time, place or manner restrictions. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 298 n. 8, 104 S.Ct.

3065, 3071 n. 8, 82 L.Ed.2d 221 (White, J., for the majority), 308 n. 6, 104 S.Ct. at 3077 n. 6 (Marshall, J., on behalf of himself and Brennan, J., dissenting (1984).

the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

*Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). The Court concluded that the distance ordinances at issue were content-neutral and, therefore, analyzed the state's interest within the time, place and manner framework in upholding the ordinances.

■ 12. Analyzing the subject distance ordinances as time, place and manner regulations, utilizing the *O'Brien* factors, the Court has little difficulty in concluding that the distance ordinances are facially valid. First, it is clear that the governmental interest meant to be furthered here, as it was in *Young* and *Renton,* is within the police powers of the government and is sufficiently substantial or important. The County stated that the purpose of the distance ordinances is to avoid the secondary effects that adult entertainment establishments have on neighboring property values, which if left unchecked, may cause blight.

13. There is, additionally, record support that confirms the County's primary motivation for adopting the distance ordinances. First, the preamble to Ordinance No. 78–33 itself states that the ordinance is being passed because "it has been demonstrated that the establishment of certain businesses in business districts has a deleterious effect on both the business and residential segments of the neighborhood, causing blight and downgrading of the property values." Second, the County's Senior Planner confirmed that these are the reasons the County adopted the distance ordinances.

■ 14. Although there was no evidence that the County actually conducted a study to confirm that adult entertainment establishments cause blight and a downgrading of the property values, *Renton* established that the County may properly rely on studies conducted in other cities and/or the actual experiences of other cities in determining how best to accomplish its goals. 106 S.Ct. at 931. The County Attorney indicated in this case that the subject ordinances were patterned after those enacted in Detroit and upheld by the Supreme Court in *Renton.* In justifying the distance ordinances, it is enough that the County relied on Detroit's experiences.

15. Continuing with the O'Brien analysis, the Court concludes that the distance ordinances are narrowly tailored. The distance ordinances, by themselves, do not have the effect of excluding all adult entertainment establishments within unincorporated Broward County. As the County demonstrated, there are at least 26 sites within the County where adult entertainment establishments could operate without violating the distance requirements. Based thereon, this Court concludes that a reasonable number of locations exist where adult entertainment can be presented unaffected by the distance ordinances as is constitutionally mandated. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *International Food & Beverages Systems v. Fort Lauderdale,* 794 F.2d 1520 (11th Cir.1986).

■ 16. The Doctrine of *res judicata* provides that when a final judgment has been entered on the merits it is a finality as to the claim in demand or controversy, not only as to every matter which was offered to sustain or defeat the claim, but also as to any other admissible matter which could have been offered for that purpose. *Nevada v. United States, et al.,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *McWilliams v. McWilliams,* 804 F.2d 1400 (5th Cir.1986); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499 (11th Cir.1984). The issues raised by plaintiff's pleadings and responses to discovery either were addressed in *Dollhouse I,* or should have been raised therein.

■ 17. Plaintiff has claimed that the "waiver" provision of Section 39–225(b) of the Broward County Code of Ordinances constitutes an unconstitutional prior restraint on plaintiff's First Amendment rights. A prior restraint claim arises when governmental personnel are vested with

discretion to either permit or deny the exercise of a protected right, without procedural safeguards. *Southeastern Promotions, Ltd. v. Conrad, et al.*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

██ 18. The waiver provision is not an unlawful prior restraint as applied to plaintiff because plaintiff has never been prevented or restrained from presenting its adult entertainment by application of the ordinance, and plaintiff may not assert that the waiver provision is a facially invalid prior restraint in light of this Court's holdings in *Dollhouse I.*

19. Plaintiff claims that the language of the provision is vague and that such vagueness allows the Zoning Division too much discretion, creating the opportunity for unlawful prior restraint.

20. The court in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), held that the respondents could not raise the issue of vagueness of an ordinance that clearly applied to them. *Id.* at 59, 96 S.Ct. at 2447. In this case, the residential distance restriction clearly applies to prohibit plaintiff from operating an adult business at the site of Thee Dollhouse III. Further, the petition submitted by plaintiff clearly did not comply with the requirements of the waiver provision. Section 39–225(b) requires that a petition contain the signatures of 51% of those people owning real property, residing or operating or managing a business within 500 feet of the adult use. Plaintiff's petition contained no signatures of operators and managers of businesses. Evidence shows that many businesses are located within 500 feet of Thee Dollhouse III. Therefore, plaintiff clearly did not satisfy the requirements of the waiver provision.

21. The distance ordinances, including the waiver provisions, were held by this Court to be a facially valid time, place and manner restriction. Plaintiff claims that the provision is so vague that the Division may act to prevent anyone from coming within its provisions. This allegation is an attack on the facial validity of the provision and, therefore, is not before the Court; it was decided in *Dollhouse I.* This Court

has re-reviewed its previous holding as to the facial validity of the distance ordinances, particularly considering all the additional testimony, arguments and positions taken by the parties in this Dollhouse II case, and hereby concludes that the original ruling herein remains valid and this Court hereby REAFFIRMS and READOPTS its position in the scope of and including all of the proceedings in Dollhouse I and Dollhouse II.

██ 22. The waiver provision of the distance ordinance does not constitute an invalid prior restraint on plaintiff's exercise of its constitutional free speech rights because the ordinance includes sufficient safeguards to prevent the Division from arbitrarily withholding a waiver. The waiver section provides:

> The prohibition shall be waived upon the presentment to the building and zoning enforcement division of a written petition requesting such waiver, signed by 51 percent of all those persons owning real property, residing or operating or managing a business within 500 feet of the proposed location of the designated use.

The cited section clearly establishes the criteria for obtaining a waiver by petition and does not leave discretion in the Division. It provides that a waiver shall be granted upon submission of a petition containing a specific percentage of certain signatures. These criteria insure the fair application of the provision to all applicants and do not provide opportunity for the Division staff to discriminate between differed speakers or messages.

23. Plaintiff further claims that the provision of Section 39–225(b) which requires the Division to "carefully" investigate the petition vests the Division with discretion to reject a petition for unspecified reasons or to indefinitely delay approval. The provision states:

> Building and zoning enforcement division shall carefully investigate the petition and signatures on the petition to verify that the petitioners do in fact own real property, or reside or do business in a residentially zoned district within 500 feet of the proposed designated use.

Section 39–225(b), Broward County Code of Ordinances. The provision when read in its entirety includes criteria to limit the Division's investigation to the single factual issue of verifying ownership. Therefore, the waiver provision contains sufficient objective criteria to prevent the Division from restricting plaintiff's operation in a discretionary manner. Also, plaintiff's petition for waiver was reviewed and rejected in a timely manner within approximately one week of its submission. Plaintiff clearly did not suffer from any alleged indefinite delay and, therefore, has no valid "as applied" challenge.

24. In holding these distance ordinances valid, including the church and school provisions, this Court impliedly found that the term "church," although not specifically defined in the Broward County Code of Ordinances, has a clear enough common meaning to provide adequate notice to those persons who may be subject to the provisions of the distance ordinances. To the extent that any doubt may exist as to the meaning of "church," the court in *Young* held that minimal vagueness which is readily subject to a narrowing construction by the courts is not fatal. *Young v. American Mini Theatres*, 427 U.S. 50 at 61, 96 S.Ct. at 2448.

25. Courts have consistently held that zoning and other regulations applicable to churches also apply to Jehovah's Witness Kingdom Halls. *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303 (6th Cir. 1983); *Minney v. City of Azusa*, 164 Cal. App.2d 12, 330 P.2d 255 (1958). Both cases concerned the application of a comprehensive zoning code to a Kingdom Hall. In each case the Jehovah's Witness Kingdom Hall was treated as a church and subjected to the requirements of zoning ordinances regulating placement of churches.

26. Plaintiff has admitted in the Joint Pretrial Stipulation that Thee Dollhouse III is located within 1,000 feet of a church, therefore the ordinance clearly applies to plaintiff. As stated in *Young*, a litigant may not successfully claim that a regulation is vague as applied to it if its operations clearly fall within the provisions of the regulation. *Young v. American Mini Theatres*, 427 U.S. 50 at 59, 96 S.Ct. 2440 at 2447. This principle precludes plaintiff's vagueness claim.

27. Plaintiff claims that the distance ordinances are overbroad in that they prevent the location of a single adult nightclub within the specified distances of residences, churches and schools. The test of the distance ordinances do clearly regulate the location of a single designated use as well as prohibit the clustering of such uses. This Court in *Dollhouse I* held that the distance ordinances, which include the restrictions on the location of one club, are supported by a sufficiently substantial governmental interest and are narrowly tailored. Memorandum Opinion at 18–20. Plaintiff's overbreadth claim is based entirely on the facial validity of the legislative determination to adopt the ordinance; it is not an as applied challenge. Therefore, plaintiff's overbreadth claim is barred by this Court's previous holdings regarding the distance ordinances.

28. The distance ordinances do not prevent plaintiff from presenting nude dancing as entertainment; they require that it not present such entertainment at the present location of Thee Dollhouse III. Plaintiff is free to exercise its free speech rights at any of the other locations which are permitted by the ordinances. Therefore, considering the judgment in *Dollhouse I*, and the adequate alternative sites available to plaintiff, it is clear that the distance ordinances do not substantially restrict plaintiff's freedom of expression.

Accordingly this Court finds as a matter of law that the distance ordinances challenged herein (both) are facially and as applied to plaintiff Constitutional and thereupon, the relief sought by the plaintiff should be and is hereby DENIED. A Final Judgment will be entered in accordance

with law under even date herewith.[4]

---

**4.** This Court has also received and reviewed a *Brief of Amicus Curiae* submitted by and in behalf of:

   Saint Nicholas Episcopal Church
   First Presbyterian Church
   New Covenant Church
   Trinity United Methodist Church
   St. Paul The Apostle Catholic Church
   St. Elizabeth Church
   Hope Lutheran Church and School and
   The North Broward School.

There are seven churches and two schools located in the vicinity of the plaintiff's adult nightclub which is operated at 3561 North Federal Highway in the unincorporated area of Broward County, Florida.